Estate of Arthur W. Davis, Marion E. Davis, Executrix v. Commissioner. Estate of Arthur W. Davis, Marion E. Davis, Executrix, and Marion E. Davis, Individually v. Commissioner.
Estate of Arthur W. Davis, Davis v. Commissioner
Docket Nos. 32286, 36717.
United States Tax Court
1952 Tax Ct. Memo LEXIS 124; 11 T.C.M. (CCH) 814; T.C.M. (RIA) 52238; July 31, 1952
*124 Decedent's employer, after dismissing him, agreed to pay decedent, in monthly installments, one year's salary as termination payment, and in the event of his death within the year to pay the balance of the termination payment to his widow or his estate. Decedent died within the year, and his former employer paid the balance of $15,000 to his widow. Respondent included the value of the right to receive the $15,000 in decedent's gross estate, and determined that the $15,000 paid to decedent's widow was taxable income to her. Held, the value of the right to receive the termination payments was properly included in decedent's gross estate; held, further, the $15,000 paid to decedent's widow was taxable income to her and was not a gift. In 1946 decedent purchased a home in which he and his wife resided until his accidental death. The deed to the property was taken in his wife's name, who executed a purchase money mortgage for the balance due. From time to time thereafter decedent paid amounts due under the mortgage. At the time of the transfer decedent enjoyed excellent health, had no medical record, and was in no financial difficulties. Upon decedent's death his widow sold the property *125 for a net value of $12,630.65, which amount respondent included in decedent's gross estate as a transfer in contemplation of death, or a transfer to take effect in possession or enjoyment at or after death. Held, decedent made a completed gift of the property in 1946, retaining no interest whatsoever therein, and the net value of the property is not includible in his gross estate under section 811 (c) of the Internal Revenue Code, as amended. Richard W. Wilson, Esq., 420 Lexington Ave., New York, N. Y., for the petitioners. Charles M. Greenspan, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion These consolidated cases involve an estate tax deficiency of $196.64 in docket number 32286, and an income tax deficiency of $4,369.20 for the taxable year 1949 in docket number 36717. The issues in the estate tax case are whether decedent's gross estate should include: (a) the sum of $15,000, representing payments by Standard Brands Incorporated, to decedent's wife, individually; and (b) the sum of $12,630.65, representing the net value of the residence in which decedent and his wife resided at the date of his death. The issues in the income tax case are: (a) whether the $15,000 paid to Marion E. Davis, individually, during 1949 constituted taxable income which should have been reported in the joint return filed for 1949; and (b) whether *127 petitioners overpaid 1949 income taxes by the sum of $964.64. Findings of Fact The petitioner, Marion E. Davis, is the duly appointed, qualified, and acting executrix of the Estate of Arthur W. Davis, deceased, and is the widow of the deceased. At the date of decedent's death, he and his wife resided in Yonkers, N. Y. A joint income tax return was filed on behalf of the decedent and Marion E. Davis for 1949 with the collector of internal revenue at Albany, N. Y. The Federal estate tax return for decedent's estate was filed with the same collector. In 1944 the decedent became associated with Standard Brands Incorporated (hereinafter referred to as Standard Brands) in New York, N. Y., as comptroller, with an initial salary of $20,000 per annum, which had been increased by 1948 to $40,000. In October, 1948, decedent's association with Standard Brands was terminated by dismissal, although he was given the privilege of resigning. Decedent was placed on leave with pay until November 15, 1948, after which time, he was informed by the president of Standard Brands, by letter dated October 28, 1948, his status would be as follows: * * *
"Beginning November 15th, you are to receive *128 one year's salary as termination payment. This can be spread over a twoyear period if you wish, but will you please indicate your preference in the matter." * * *
Under date of November 3, 1948, decedent received the following letter from the vice-president and treasurer of Standard Brands: "Dear Arthur: "This will confirm the arrangements whereby you will receive an amount equal to your salary for one year as termination payment. Beginning November 15, 1948 and subject to normal deductions, this sum will be paid to you in monthly installments until December 31, 1948 and thereafter will be paid in such manner as you direct, provided, however, that the payments shall not be made over a period in excess of two years from November 15, 1948. In the event that you shall die prior to the full payment of said termination payment any balance due shall be paid to your widow or estate as you direct. "Very truly yours," Prior to December 31, 1948, Standard Brands paid $5,000 of such termination payment to the decedent. From January 1, 1949, to July 15, 1949, the date of decedent's death, Standard Brands paid the decedent $20,000 of such termination payment by company checks. Attached *129 to such checks were vouchers or stubs entitled "Employee's Earnings Statement" showing earnings and deductions, with the statement "Detach this stub before presenting check for payment." A typical earnings statement for the "pay period ending June 15, 1949" showed "Earnings" of $3,333.33, and "Deductions" of $466.20 for withholding tax and $17.50 for group insurance. The decedent died instantly as a result of an automobile accident on July 15, 1949. Under date of July 20, 1949, decedent's widow received a letter from the general counsel of Standard Brands which reads in part as follows: "Dear Mrs. Davis: "Enclosed please find check to your order in the amount of $3,333.33 representing amount (without normal deductions) payable July 31, 1949 in accordance with the arrangements made with Mr. Davis in October of last year. Unless you desire immediate payment of the balance due under these arrangements, such balance will be paid to you in monthly installments until November 15, 1949. Please let me know how you wish this to be handled." * * *
Between July 15, 1949, and December 31, 1949, Standard Brands paid Marion E. Davis, individually, the remaining $15,000 of the termination *130 payment. The stubs accompanying the checks contained no deductions for withholding tax or otherwise. Decedent and his wife moved to New York in 1944. They rented a house at 61 Beechmont Avenue, Yonkers, N. Y. In July, 1946, decedent purchased this property. The purchase price was $25,000, of which decedent paid $7,000 in cash. Decedent had the seller make the deed directly to his wife, Marion Elizabeth Davis, who executed a mortgage to the seller, dated July 29, 1946, for the unpaid balance of the purchase price. Subsequent to the purchase, and prior to his death, the decedent paid an additional $3,300 on the mortgage. At the time he purchased the residence, decedent was 47 years of age and enjoyed excellent health. He had no prior medical record, and was not in financial difficulties. His reason for giving the residence to his wife was to assure her the security of a home in the event of "the ever present possibility of one kind of an emergency or another." Decedent's salary at that time was about $30,000 per year, and he carried life insurance of between $75,000 and $80,000. Decedent's wife had very little funds of her own. Subsequent to decedent's death, and on or about September 1, 1949, Marion *131 E. Davis sold the property at 61 Beechmont Avenue for a net sum of $12,630.65. In the joint income tax return filed on behalf of the decedent and his widow for 1949, the $20,000 received by decedent from Standard Brands was included as taxable income, but the $15,000 received by Marion E. Davis, individually, was omitted therefrom. In determining the income tax deficiency herein, respondent included the $15,000 received by Marion E. Davis in 1949 taxable income. In the estate tax return for the decedent's estate, the executrix failed to include the value of the residence, $12,630.65, or the $15,000 received by Marion E. Davis, individually, in the decedent's gross estate. In determining the estate tax deficiency, respondent included both of these items in the decedent's gross estate. Opinion RICE, Judge: The first issue in the estate tax case is whether decedent's gross estate should include $15,000, representing the unpaid portion of the termination payment due him under the arrangement made with Standard Brands. The reasons that motivated the parties in reaching their agreement that decedent should receive an amount equal to one-year's salary as a termination payment are, *132 in our opinion, immaterial. The facts show that this was their agreement, and that decedent had received $25,000 there-under prior to his accidental death. An essential part of the agreement was that his widow or his estate would receive any balance due in the event of his death before the agreed sum was paid. The picture on July 15, 1949, is, therefore, perfectly clear. There was owing decedent when his death occurred $15,000 under the "arrangement", and this obligation was immediately recognized by Standard Brands through the letter of its general counsel to decedent's widow, dated July 20, 1949. That letter enclosed a check to her order, and stated that monthly installments would continue under the "arrangements" unless she desired immediate payment of the balance due. There could hardly be a clearer recognition of the transfer from the deed to the living of a right to receive property. Believing, as we do, that the right to receive the $15,000 was property owned by decedent at the date of his death, the value thereof is includible in his gross estate under section 811 (a) of the Internal Revenue Code. There is no dispute with respect to the balance due *133 at July 15, 1949, under the "arrangement" and we are satisfied that the value of the right was the balance due on that date. On this issue we hold for the respondent. The second issue in the estate tax case is whether the value of the residence occupied by decedent and his wife should be included in the decedent's gross estate. The parties are in accord as to the net value of the residence, if any amount is to be included in the gross estate. Petitioners contend that decedent gave the property to his wife in 1946, in order to assure her of a home, when he was 47 years of age, enjoying excellent health, and with no financial worries. Under such circumstances, petitioners deny that the transfer was made in contemplation of death or that the transfer was to take effect in possession or enjoyment at or after death as provided in section 811 (c) of the Code. Petitioners also point out that section 811 (c) of the Code was amended by section 7 of the Technical Changes Act of 1949 (63 Stat. 895), and that, as amended, section 811 (c) does not require inclusion of an interest in property transferred prior to October 7, 1949, and intended to take effect in possession or enjoyment at or after *134 his death, unless decedent retained a reversionary interest in the property arising by the express terms of the instrument of transfer and not by operation of law. On this issue we agree with the petitioners. The circumstances under which decedent transferred the property to his wife negative any conclusion that the transfer was made in contemplation of death. The facts show that the transfer was prior to October 7, 1949, and the deed to the property was in decedent's wife's name alone. We can see no similarity in the facts here to those which obtained in the Estate of John W. Mortimer, 17 T.C. 579 (1951). Mortimer never intended to make a gift of the properties and did not deliver the deeds to the alleged donees. The donee here not only received the deed to the property but was in possession thereof. Decedent resided there and continued to make payments on the mortgage, but it could hardly be questioned that his wife was the legal and equitable owner of the residence. Whatever use, possession, and enjoyment the decedent had of the property was due to his marital status and not because of any interest he owned in the property. Nor can it be said that decedent retained *135 any reversionary interest in the property. The deed was to Marion Elizabeth Davis. The mortgage, according to the documentary evidence of record, was executed by her as the owner of the property on July 29, 1946, and no mention is made in the policy of title insurance that decedent was obligated on the purchase money note or mortgage. There is no documentary evidence in this record to show that decedent had any interest whatsoever in the property, reversionary or otherwise. We hold that decedent's transfer in July, 1946, was not a transfer within the meaning of section 811 (c), as amended, and the net value of the property should not be included in his gross estate. In so holding we have considered Wasserman v. Commissioner, 139 Fed. (2d) 778 (C.A. 1, 1944); Estate of Pamelia D. Holland, 47 B.T.A. 807 (1942), modified 1 T.C. 564 (1943); and Helvering v. Hallock, 309 U.S. 106 (1940), cited by the respondent. We cannot agree, however, that these cases are in point, or that they are controlling here. The remaining issue to be decided is whether the payment of $15,000 to Marion E. Davis, individually, during 1949 by Standard Brands *136 was a gift as contended by petitioners or taxable income as determined by the respondent. The circumstances under which the payments were made are fully described in our findings and need not be repeated. It cannot be denied that the monthly payments had their source in decedent's agreement with Standard Brands or that the yardstick used to measure the amount that would be paid was "one year's salary as termination payment." Nor can it be denied that the $20,000 received by decedent in 1949, prior to his death, was reported as taxable income even though petitioner contends now that the $15,000 paid by Standard Brands to the widow was a gratuity and therefore nontaxable under section 22 (b) (3) of the Code. We are unable to agree with petitioner's contention. The situation here is analagous to and our decision is controlled by Bausch's Estate, et al. v. Commissioner, 186 Fed. (2d) 313 (C.A. 2, 1951), affirming 14 T.C. 1433 (1950); Varnedoe v. Allen, 158 Fed. (2d) 467 (C.A. 5, 1946), cert. den. 330 U.S. 821 (1947); and Flarsheim v. United States, 156 Fed. (2d) 105 (C.A. 8, 1946). Upon the authority of these cases, we *137 hold that the $15,000 paid Marion E. Davis represented payments by way of compensation for services rendered by her deceased husband to the payor, Standard Brands. Furthermore, our decision on this issue is supported by the provisions of section 126 of the Code, [1] and the decisions interpreting and applying that section. It is apparent that Marion E. Davis acquired the right to receive the $15,000 by reason of the death of the decedent, and that this right should be treated in her hands, under subsection 126 (a) (3), as if it had been acquired by her in the transaction by which the decedent acquired such right, and that the amount includible in her gross income, under subsection 126 (a) (1), shall be considered in her hands to have the character which it would have had in the hands of the decedent if the decedent had lived and received such amount. The character of the $15,000 in decedent's hands had he lived to receive it would have been taxable income just as the $20,000 he received under the agreement in 1949 prior to his death. In view of this fact and the other facts of record, we hold that the $15,000 paid to Marion E. Davis, individually, was also taxable income. O'Daniel's Estate, et al. v. Commissioner, 173 Fed. (2d) 966 *138 (C.A. 2, 1949); Estate of Fred Basch, 9 T.C. 627 (1947). *139 Our decision on the first three issues indicates that there will be no overpayment of income tax for 1949. In determining the income tax liability in docket number 36717, respondent should make allowance for the deduction for estate tax provided in section 126 (c), if any, as a result of our decision on the contested issues. Decisions will be entered under Rule 50. Footnotes
1. SEC. 126. INCOME IN RESPECT OF DECEDENTS. (a) Inclusion in Gross Income. - (1) General Rule. - The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period shall be included in the gross income for the taxable year when received, of: (A) the estate of the decedent, if the right to receive the amount if acquired by the decedent's estate from the decedent; (B) the person who, by reason of the death of the decedent, acquires the right to receive the amount, if the right to receive the amount is not acquired by the decedent's estate from the decedent; or * * *
(3) Character of Income Determined by Reference to Decedent. - The right, described in paragraph (1), to receive an amount shall be treated, in the hands of the estate of the decedent or any person who acquired such right by reason of the death of the decedent, or by bequest, devise, or inheritance from the decedent, as if it had been acquired by the estate or such person in the transaction by which the decedent acquired such right; and the amount includible in gross income under paragraph (1) or (2) shall be considered in the hands of the estate or such person to have the character which it would have had in the hands of the decedent if the decedent had lived and received such amount.↩