*An order will be entered accordingly.*

FLORENCE S. LUNTZ, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 57652, 61272. Filed January 13, 1958.

*Ben M. Dreyer, Esq.*, for the petitioner.
*Maurice B. Townsend, Jr., Esq.*, for the respondent.

FORRESTER, *Judge:* The respondent has determined deficiencies in income tax and addition thereto, as follows:

| Docket No. | Year | Deficiency | Addition to tax sec. 293(a) |
|---|---|---|---|
| 57652 | 1952 | $4,644.59 | |
| 61272 | 1953 | 30,918.05 | $1,545.90 |

In Docket No. 57652 petitioner claims an overpayment of income tax for 1952 because of respondent's inclusion of $48,000 in her taxable income, which amount petitioner contends was a pension or gift. Petitioner did not include in her return for 1953 a like amount, similarly received.

The only question presented is whether petitioner is entitled to exclude from gross income as a nontaxable gift amounts totaling $48,000 paid to petitioner by her deceased husband's former employer in each of the years 1952 and 1953. Other of respondent's adjustments to both years are not in dispute.

### FINDINGS OF FACT.

Some of the facts have been stipulated and are found accordingly.

Petitioner, Florence S. Luntz, is a resident of Canton, Ohio. She filed her separate income tax returns for each of the years 1952 and 1953 with the district director of internal revenue at Cleveland, Ohio.

Petitioner's husband, Darwin S. Luntz (hereinafter referred to as the decedent), died December 16, 1951. At the time of his death he was the president of the Luntz Iron & Steel Company (sometimes hereinafter referred to as the company).

The Luntz Iron & Steel Company is one of the largest corporations in the United States handling used iron and steel. The company was begun in 1916 as a partnership and changed to its corporate form in 1918. Decedent was the company's first president and served in that capacity until his death in 1951. During that period he rendered valuable services to the company for which he had been paid at the rate of $48,000 per year during the last years of his presidency. This amount was not as large as the salaries of other executives in similar positions in the same industry.

The Luntz Iron & Steel Company is a "family" corporation. On December 16, 1951, the date of decedent's death, stock ownership of the company, save 1 share, was closely held by decedent, his brother, his sister, the estate of a deceased brother, and the immediate families of these four persons, as follows:

| Name | Shares owned | Relationship to Darwin S. Luntz | Name | Shares owned | Relationship to Darwin S. Luntz |
|---|---|---|---|---|---|
| Darwin S. Luntz | 225 | | Sylvia Luntz Chase | 6 | Daughter |
| Abe M. Luntz | 210 | Brother | Lois Luntz | 3 | Daughter-in-law |
| William Goldsmith | 125 | Brother-in-law | Joan Goulder | 3 | Niece |
| Minette Goldsmith | 125 | Sister | Robert A. Luntz | 6 | Nephew |
| Charles T. Luntz Estate | 249 | Brother | Genevieve Luntz | 3 | Niece |
| Florence S. Luntz | 7 | Wife | William Luntz | 12 | Nephew |
| Fanny T. Luntz | 7 | Sister-in-law | Theodore Luntz | 9 | Nephew |
| Stanton Luntz | 6 | Son | William E. Gilbert | 1 | Auditor of company |
| Myron L. Chase | 3 | Son-in-law | | | |

Thus, out of the total of 1,000 shares of stock outstanding, decedent owned 225 shares, petitioner 7 shares, their son 6 shares, their daughter-in-law 3 shares, their daughter 6 shares, and their son-in-law 3 shares, for a total of 250 shares.

At the time of his death the company owed decedent no money for services rendered to it. There was in existence no agreement, either written or implied, whereby the company would pay anything to either decedent's estate or his widow following his death.

On January 8, 1952, the board of directors of the Luntz Iron & Steel Company met and passed the following resolution:

WHEREAS, it is the desire and wishes of the Directors and Stockholders to authorize payment to Florence S. Luntz, widow of the deceased Darwin S. Luntz, a temporary pension; and further to authorize the same provisions and payments in favor of the wives of A. M. Luntz and William Goldsmith in event of death of either or both of said A. M. Luntz and William Goldsmith.

THEREFORE, BE IT RESOLVED, The Luntz Iron & Steel Company pay Florence S. Luntz the same salary as received by Darwin S. Luntz, namely: $48,000 per annum for two full years payable in quarterly installments, in consideration of past services rendered by said Darwin S. Luntz; and further, in consideration of past services rendered, and future services to be rendered, the same provisions shall be made for, and payments made to, the wives of A. M. Luntz and William Goldsmith in event of death of either or both of said A. M. Luntz and William Goldsmith.

The payments were granted under proper authority of the company. The members of the board of directors at the time the above resolution was passed and their relationship to the deceased are as follows:

Abe M. Luntz_____ President and brother of deceased
Stanton Luntz_____ Son of deceased
Robert A. Luntz_____ Nephew of deceased
James K. Luntz_____ (Relationship not shown)
William Goldsmith_____ Brother-in-law of deceased

Pursuant to the above resolution the company made payments to petitioner totaling $48,000 in each of the years 1952 and 1953. This sum was the same as the salary which decedent would have received from the company in each of the years 1952 and 1953 had he been alive. The company deducted the amounts paid to petitioner in its income tax returns for 1952 and 1953, which deductions were allowed to the company.

Petitioner, in her income tax return for the year 1952, included the payments in the total amount of $48,000 in gross income and paid the tax thereon. Less than a month later she filed an amended return for the same year omitting the $48,000 and claiming an overpayment of tax, explaining the change as follows:

Original return erroneously reported widow's pension of $48,000.00 received from The Luntz Iron & Steel Company, which under recent court decisions is not subject to tax.

Petitioner did not report the $48,000 received by her from the company in 1953 in her income tax return for that year.

Petitioner has never been employed by the company and has never served it either as a director or an officer. The company was under

no compulsion to make the above payments to petitioner and received no benefit because of them.

The 1952 and 1953 payments to petitioner from the Luntz Iron & Steel Company were gifts.

OPINION.

The respondent, in determining the deficiencies for the years 1952 and 1953, included in petitioner's taxable income for each of the 2 years the amount of $48,000 received by her from her deceased husband's former employer and seeks to sustain this action under the broad language of section 22 (a) of the Internal Revenue Code of 1939. The petitioner contends that the payments were nontaxable gifts.

We have held in a number of recent cases that the payments made to the widow of a deceased employee by his former employer constituted gifts which are exempt from taxation under section 22 (b) (3) of the Internal Revenue Code of 1939. *Louise K. Aprill*, 13 T. C. 707; *Alice M. Macfarlane*, 19 T. C. 9; *Estate of Arthur W. Hellstrom*, 24 T. C. 916; *Estate of John A. Maycann, Sr.*, 29 T. C. 81. In each of these cases the issue before this Court was one of fact, i. e., whether the payments were in the nature of gifts, or instead, compensation for services rendered to the payor. Relying on *Bogardus* v. *Commissioner*, 302 U. S. 34, the criterion used by us in deciding this issue was the intent of the payor.

In *Estate of Arthur W. Hellstrom*, *supra*, we listed a number of factors supporting the legal conclusion of gift. They were (1) the payments had been made to the wife of the deceased employee and not to his estate; (2) there was no obligation on the part of the corporation to pay any additional compensation to the deceased employee; (3) the corporation derived no benefit from the payment; (4) the wife of the deceased employee performed no services for the corporation; and (5) the services of her husband had been fully compensated.

The petitioner, in the instant case, has produced evidence supporting the above-mentioned indicia of gift. The only item of evidence which tends to throw some degree of doubt on the intent of the company is the corporate resolution of January 8, 1952. It is respondent's position that this resolution exhibits a "plan" of further compensating corporate officers rather than of making gifts.

We agree with respondent that the inclusion in the corporate resolution of language authorizing future payments to the wives of two yet living corporate officers tends to detract from the otherwise clear evidence of gift. However, though ineptly drawn, this resolution quite obviously encompasses two entirely separate purposes, only one of which directly concerns petitioner. Certainly the remainder of the resolution must be considered for the light it throws upon the intent

of the corporate payor. We have accorded it such consideration and feel that in spite of its indications as concerns the wives of living officers, it still indicates gift as concerns petitioner. We are not called upon here to characterize the plan which is indicated for the wives of the living—petitioner is not in that class—nor has any interdependence between the two purposes of the resolution been shown.

While the close family control of the company and of its board of directors does call for a closer scrutiny of the facts indicating corporate purpose, we feel that the circumstances in this case have withstood the test.

In establishing the reasonableness of the salary paid the decedent during his lifetime and therefore the reasonableness of the pension paid petitioner after his death, the parties have stipulated to the fact that the decedent had been paid a salary by the company which was less than the salaries paid to other corporate officers of comparable companies in the same industry. Respondent argues that the obvious implication from this stipulation is that, at least in a moral if not in a contractual sense, the decedent was not "paid in full" during his lifetime and that the corporate resolution of January 8, 1952, sought to remedy the underpayments.

This argument seems to us to be in large part speculative. The salary paid to decedent was large by ordinary standards, the size of salaries paid to "other executives in similar positions in the same industry" is not shown, and the now president of the company has testified that the decedent had been paid in full for his services. As was stated in *Bogardus* v. *Commissioner*, *supra*, "A gift is none the less a gift because inspired by gratitude for * * * past faithful service."

In our opinion the record adequately supports a finding of corporate intent to make gifts to the petitioner in each of the years 1952 and 1953 in the amount of her deceased husband's former salary.

*Decisions will be entered under Rule 50.*