301 F.2d 287
 62-1 USTC P 9387
 Ernest L. POYNER and Union Trust Company, of Maryland,
Executors of the Estate of Mervin G. Pierpont,
Deceased, and Lallah R. Pierpont, Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
 No. 8350.
 United States Court of Appeals Fourth Circuit.
 Argued Nov. 21, 1961.
Decided March 21, 1962.
 
 Mannes F. Greeberg and John S. McDaniel, Jr., Baltimore, Md. (John W. Cable, III, Baltimore, Md., on the brief), for petitioners.
 Wayne G. Barnett, Atty., Dept. of Justice (Louis F. Oberdorfer, Asst. Atty. Gen., and John B. Jones, Jr., and Daniel K. Mayers, Attys., Dept. of Justice, on the brief), for respondent.
 Before SOBELOFF, Chief Judge, and SOPER and J. SPENCER BELL, Circuit judges.
 SOBELOFF, Chief Judge.
 
 
 1
 Not the least of the difficulties often faced by a recently widowed woman is the loss of her husband's financial support. However, for many widows of ranking employees in companies, this cause for worry has been alleviated by the practice of the employer making payments to the widow for limited periods following the husband's dath, frequently by continuing to pay her the salary her husband would have received had he lived. The Commissioner of Internal Revenue has since 1950[1] sought to treat such payments as ordinary income to the widow under the general provisions of section 61 of the Internal Revenue Code, 26 U.S.C.A. 61.[2] The widows, on the other hand, have contended with considerable success in the courts that the payments were gifts, hence not includible in gross income under section 102.[3] The issue in the present case is of this character. We are asked by a widow to reverse a decision of the Tax Court which treats as ordinary income the payments made to her by a corporation of which for 38 years her husband had been president and majority stockholder.[4]
 
 
 2
 The statutory definition of a 'gift' which is excluded from a person's gross income by section 102 and the function of an appellate court in reviewing the findings of the trier of fact in these cases have recently received extensive attention by the Supreme Court. Commissioner v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960). A study of this decision indicates that in any given case there are three steps which must be followed in reaching a conclusion. First, the trier of fact must make findings as to the basic facts, the actual happenings. These findings may not be upset if found by a jury unless the reviewing court is convinced that reasonable men could make only contrary findings, or, if found by a judge without a jury, unless clearly erroneous.
 
 
 3
 Second, the trier of fact must draw from these basic findings his inferences as to the 'dominant reason' for the payments-- the answer to the question why the payments were made. This determination too is one of fact as to which appellant review is restricted to the clearly erroneous standard where, as in the present case, a judge sat without a jury. The scope of review is therefore limited to ascertaining whether the trier of fact considered the correct criteria in making the factual inferences and whether the finding as to dominant motive is sufficiently supported in the evidence.[5]
 
 
 4
 Third, the lower court must decide whether the dominant reason, as found, for the payment is such as to require gift treatment and an escape from taxation under section 102, or income treatment and taxation under section 61. This question, involving the proper meaning of the statutory term 'gift,' is one of law as to which an appellate court may make an independent judgment. To give guidance in the decision of future cases, the majority opinion in Deberstein summarized earlier cases, citing specific examples of motives which require as a matter of law either the conclusion that the payments are a gift or that they are income, as those terms are used in the Internal Revenue Code.[6]
 
 
 5
 Now we shall see how this three-stage approach was followed in the case before us. The basic facts are undisputed since the parties submitted the case to the Tax Court upon stipulation. Over a span of 38 years before his death on January 31, 1956, Mervin G. Pierpont, the taxpayer's husband, served as the president of the Loewy Drug Company, a wholesale drug distributor in Baltimore. Throughout the entire period, he owned two-thirds of the outstanding stock, the rest being owned by Morton L. Lazarus. The company had paid him all amounts owed for his services. On March 22, 1956, the Board of Directors of the company passed a resolution whereby a 1954 Cadillac, valued at $3,245.14, was transferred to his widow. The resolution stated that 'in recognition of the services rendered by the late Mervin G. Pierpont, this Corporation pay to his widow as a continuance of his salary the sum of Three Thousand, Two Hundred Forty-Five Dollars and Fourteen Cents * * *.' By a similar resolution passed the following month, the company undertook to pay his widow $600 per month either until the payments aggregated $20,000 or until further action by the Board. She received under the two resolutions a total of $9,910.05 in 1956 and $7,800.00 in 1957 when the payments were terminated upon the liquidation of the company. It was stipulated in the Tax Court that the payments were 'not made pursuant to any contract, plan, policy, practice, or understanding made or in effect prior to the Decedent's death.' However, there is no mention in the stipulation as to who were the directors who authorized the payments and what were their relationships to the widow; neither are we told to whom Pierpont devised his controlling interest in the company, or what the widow's personal financial status may have been.
 
 
 6
 In her 1956 tax return the widow reported as a gift the $9,910.05 received in that year. The Commissioner, however, determined that it was income to her, applied the $5000 exclusion provided for employee death benefits by section 101(b),[7] and asserted a tax deficiency of $1,376.22 on the remaining $4,910.05. The sums paid the widow had been fully deducted by the company as an expense of doing business.
 
 
 7
 From the stipulated facts, the Tax Court proceeded to draw factual inferences as to motive. Referring to the two corporate resolutions which authorized the payments, the Tax Court said that they 'suggest that the dominant intention of the donor was to pay additional compensation in respect of the decedent's services.' In addition, the court found that there was 'nothing in the record that would lead us to conclude that the alleged gifts 'proceed(ed) from a detached and disinterested generosity * * * out of affection, respect, admiration, charity or like impulses," motives which the Supreme Court recognized in Duberstein as indicating gift treatment. The Tax Court then summarized its findings and conclusions by saying that 'the payments in controversy were not intended as a 'gift," and treated them as income.
 
 
 8
 We think that the findings of the Tax Court regarding the dominant reason for the payments, based as they are upon the stipulated facts, cannot be sustained. The decisions in the Tax Court prior to the Duberstein case[8] established a set of factors to be evaluated in discovering the dominant motive for such payments to widows, and our decision in Bounds v. United States, 262 F.2d 876 (4th Cir. 1958), recognized and followed these criteria. The clearest formulation appears in Florence S. Luntz, 29 T.C. 647, 650 (1958), where the Tax Court listed the following as the five factors to be considered:
 
 
 9
 '(1) the payments had been made to the wife of the deceased employee and not to his estate; (2) there was no obligation on the part of the corporation to pay any additional compensation to the deceased employee; (3) the corporation derived no benefit from the payment; (4) the wife of the deceased employee performed no services for the corporation; and (5) the services of her husband had been fully compensated.'
 
 
 10
 The stipulated facts directly respond to every one of the five factors, and in each instance the response is favorable to the widow. This being so, we see no justification for the Tax Court's finding that 'there is no solid evidence that they (the directors authorizing the payments) were motivated in any part by the widow's needs or by a sense of generosity or the like.' In every prior Tax Court case, essentially identical facts were held sufficient to support the conclusion that the dominant motive was sympathy for the taxpayer's widowed position. The only evidence on which the Tax Court specifically relies for its contrary finding is the wording of the authorizing corporate resolutions. While the language of the resolutions certainly merits consideration, never before has such language been deemed sufficient by itself, and in the face of the other above specified factors, to support a finding that the payments were compensation for services rendered.[9] As the facts stipulated in this case do not differ from those deemed conclusive in past cases, a contrary finding seems to us without warrant.
 
 
 11
 The Supreme Court in Duberstein did not destroy the authority of the earlier Tax Court cases and the guides enunciated in them for discovering motivation. The plea addressed by the Government to the Supreme Court in Duberstein to establish a new test defining 'gift' was espressly rejected. The Court limited itself to summarizing earlier decisions as as which particular dominant motivations, when adequately supported by the evidence, result in income treatment, and which result in gift treatment. An enumeration of the criteria, by which the trier of fact shall determine in every type of case what that dominant reason is, was deemed inadvisable, if not futile. The Court preferred to leave the development of such criteria to a case-by-case approach in the lower courts.
 
 
 12
 On the other hand, Duberstein cannot be read as limiting inquiry by the trier of fact solely to the factors recognized by the earlier decisions. The objective is to discover which motive is dominant in a field of co-existing motives. In the task of sorting out the varying motives, the development of more reliable criteria by the triers of fact should not be curtailed. Indeed, the Tax Court since Duberstein has considered it necessary to inquire into the widow's stock holdings in the company[10] and the knowledge or lack of it on the part of the Board of her financial status following the death of her husband.[11] The Tax Court in the present case also seems to have thought that the directors' knowledge of 'the widow's needs' was an important factor. These subjects are certainly relevant, and inquiry may properly be directed to them, and whatever other factors the trier of fact might think helpful.
 
 
 13
 Nevertheless, none of the facts stipulated in the present case touches upon those additional factors which since Duberstein have been important. The stipulations were made before Duberstein and covered only the criteria which had up to that time been formulated and treated by the Tax Court and this circuit as decisive. It would be unfair now to allow findings to stand, which are adverse to the taxpayer because of her silance on matters never deemed pertinent in earlier litigation. While, as we have indicated, it is perfectly proper for the court to broaden the field of inquiry beyond that previously established, this should not be done without affording an opportunity to the taxpayer, and to the Government as well, to amplify the record. Of course, we do not undertake to dictate the result to be reached upon the broadened inquiry. Additional data which the parties will be free to produce may have the effect of confirming or overcoming the result which the five Luntz factors, standing alone, were held to require in the earlier cases.
 
 
 14
 Decision vacated and case remanded for proceedings not inconsistent with this opinion.
 
 
 
 [1]
 I.T. 4027, 1950-2 Cum.Bull. 9
 
 
 [2]
 '61. Gross income defined
 '(a) General definition.-- Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:
 '(1) Compensation for services, including fees, commissions, and similar items; * * *.'
 
 
 [3]
 '102. Gifts and inheritances
 '(a) General Rule.-- Gross income does not include the value of property acquired by gift, bequest, devise, or inheritance.'
 
 
 [4]
 35 T.C. 65 (1960). For general discussions of the issues involved in this case, and summaries of the course of Treasury rulings and judicial decisions concerning corporate payments to widows under section 102 and its predecessors, see Crown, Payments to Corporate Executives' Widowns, N.Y.U. 19th Inst. on Fed.Tax 815 (1961); Pelisek, Tax Treatment of Payments to the Widows of Corporate Officers and Employees, 44 Marq.L.Rev. 16 (1960)
 
 
 [5]
 This restricted scope of review was applied in Kaiser v. United States, 363 U.S. 299, 80 S.Ct. 1204, 4 L.Ed.2d 1233 (1960), and by the courts of appeals in United States v. Stanton, 287 F.2d 876 (2d Cir. 1961), and United States v. Kasynski, 284 F.2d 143 (10th Cir. 1960). In defining the proper scope of appellate review, the Supreme Court in Deberstein specifically adopted the view of the dissenters in Bogardus v. Commissioner, 302 U.S. 34, 39, 44, 58 S.Ct. 61, 64, 82 L.Ed. 32 (1937). The majority had there held that drawing factual inferences from the basic facts as to the reasons for the payments was 'a conclusion of law or at least a determination of a mixed question of law and fact,' a question to which the clearly erroneous standard of review did not apply so that an appellate court could more independently exercise its own judgment. The courts of appeals, however, did not consistently use this approach. Compare Simpson v. United States, 261 F.2d 497, 500 (7th Cir. 1958) (broad review), with United States v. Allinger, 275 F.2d 421, 423 (6th Cir. 1960) (narrow review). In Bounds v. United States, 262 F.2d 876, 880 (4th Cir. 1958), relying on the majority's opinion in Bogardus, we felt at liberty to apply the broad scope of review in reversing the findings of the District Court as to motive. Consequently, we would be guilty of no inconsistency were we to reach a different result here, having proceeded in Bounds according to now unacceptable standard for review
 
 
 [6]
 363 U.S. at 285, 80 S.Ct. 1190, 4 L.Ed.2d 1218
 
 
 [7]
 '101. Certain death benefits
 '(b) Employees' death benefits.--
 '(1) General rule.-- Gross income does not include amounts received (whether in a single sum or otherwise) by the beneficiaries or the estate of an employee, if such amounts are paid by or on half of an employer and are paid by reason of the death of the employee.
 '(2) Special rules for paragraph (1).--
 '(A) $5,000 limitation.-- The aggregate amounts excludable under paragraph (1) with respect to the death of any employee shall not exceed $5,000.
 ' * * * *' li
 Before us the Government expressly declined to advance the argument that section 101(b) now requires all payments from an employer, made by reason of the death of an employee, to be included in the recipient's gross income, subject only to the $5,000 exclusion. This position finds support in our dictum in Bounds v. United States, 262 F.2d 876, 878 n. 2 (4th Cir. 1958), and in the dictum of Judge Dimock in Rodner v. United States, 149 F.Supp. 233, 236-38 (S.D.N.Y.1957). It has been specifically rejected in Reed v. United States, 177 F.Supp. 205, 209 (W.D.Ky.1959), aff'd per curiam, 277 F.2d 456 (6th Cir. 1960); Cowan v. United States, 191 F.Supp. 703, 705 (N.D.Ga. 1960); Frankel v. United States, 192 F.Supp. 776 (D.Minn.1961); and by Judge weinfeld in Wilner v. United States, 195 F.Supp. 786, 787-90 (S.D.N.Y.1961). In view of the Government's position, we are not called upon to reconsider this issue.
 
 
 [8]
 E.g., Florence S. Luntz, 29 T.C. 647 (1958); Estate of John A. Maycann, 29 T.C. 81 (1957); Estate of Arthur W. Hellstrom, 24 T.C. 916 (1955); Louise K. Aprill, 13 T.C. 707 (1949); see Pelisek, supra note 4, at 20 n. 20
 
 
 [9]
 See Bounds v. United States, 262 F.2d 876, 881-82 (4th Cir. 1958). The language of the corporate resolution here is no doubt modeled after the sample resolution in I.T. 3329, 1939-2 Cum.Bull. 153. See Pelisek, supra note 4, at 22-23. I.T. 3329 was in this respect revoked in 1950 by I.T. 4027, 1950-2 Cum.Bull. 9, but without any appreciable effect on the course of decision in the Tax Court. See Estate of Arthur W. Hellstrom, 24 T.C. 916, 919 (1955)
 
 
 [10]
 Estate of Rose A. Russek, 20 CCH Tax Ct.Rep. 123 (January 31, 1961); see Ivan Y. Nickerson, 19 CCH Tax Ct. Mem. 1508 (1960) (payment, to children of deceased employee)
 
 
 [11]
 Estate of Julius B. Cronheim, 20 CCH Tax Ct.Rep. 1144 (August 17, 1961); Ray I. Martin, 36 T.C. No. 56 (June 21, 1961); Mildred W. Smith, 20 CCH Tax Ct.Rep. 775 (May 29, 1961); Estate of Rose A. Russek, 20 CCH Tax Ct.Rep. 123 (January 31, 1961)