Anna **CORASANITI** and John A. Corasaniti and Joseph Corasaniti, Executors of the Estate of Frank Corasaniti, deceased

v.

**UNITED STATES** of America.

Civ. No. 13878.

United States District Court
D. Maryland.

Dec. 31, 1962.

Martin Fedder and Michael F. Delea, Baltimore, Md., for plaintiffs.

John M. Hammerman and Bernard J. Schoenberg, Attorneys, Department of Justice, Washington, D. C., and Joseph D. Tydings, U. S. Atty., and Robert W. Kernan, Asst. U. S. Atty., Baltimore, Md., for defendant.

THOMSEN, Chief Judge.

This is an action for the recovery of income taxes alleged to have been illegally assessed. The question is whether weekly payments by a corporation to a widow for a period of two years in the amount of her deceased husband's salary constituted taxable income to the widow or a gift. This Court will follow the three steps towards reaching a conclusion prescribed by Poyner v. C. I. R., 4 Cir., 301 F.2d 287, 289.

*I. Basic Facts*

Some of the basic facts are stipulated or undisputed, but some findings have required the Court to resolve conflicting testimony.

The plaintiff Anna is the widow of Frank, the eldest of four Corasaniti brothers, known as Frank, Joe, Victor and Eugene, who came to this country *seriatim* from Italy. In the early 1920's Joseph Lavezza, Joe's father-in-law, and Frank, who with another had entered

the paving business in a small way, admitted Joe and Victor to the partnership, which was succeeded by an equal partnership of the three brothers when Lavezza dropped out. The business was incorporated under the name of Arundel Construction Co. Inc., in 1935, Frank, Joe and Victor each receiving 80 shares of stock. Later, each of them disposed of 20 shares, of which 20 went to Eugene, the youngest of the four brothers, and 10 apiece to the two sons of Frank, one son of Joe and one son of Victor.

Arundel engaged in the asphalt and concrete paving business. Frank, Joe and Victor were the directors; Eugene became a director later. Frank was the president, in charge of its office and administration. Joe was the plant superintendent, Victor the outside general superintendent, and Eugene superintendent of the asphalt gang; all were paid the same salary. The four sons who held stock of Arundel were not employed by that corporation, but together engaged in the building and construction business through a corporation of their own, which had its office in the same building as Arundel. The relationship between the four brothers was very close and friendly. Frank, Joe and Victor lived in identical houses next door to each other on Traymore Road.

The business of Arundel prospered. The salary of each of the brothers was fixed at $600 per week in 1947, where it remained until after Frank's death on March 10, 1955. As of December 31, 1954, a surplus of $380,000 had been accumulated above the capital of $45,000. No dividends on the stock had ever been paid.

By his will, executed in 1944, Frank left his stock in trust for his wife for life, with remainder to his sons, who are the trustees, with power to invade the corpus for her needs. Nothing but the stock passed under Frank's will; the rest of his property was held with Anna as tenants by the entireties. It consisted of the home, valued at $20,000, unimproved real estate, $22,000, a Cadillac automobile, $3,000, cash in banks and building associations, $43,000, and U. S. Savings Bonds, $8,000. Arundel owed Frank no money at the time of his death.

Michael F. Delea had represented Frank, Joe, Victor and the corporation for many years. About a month after Frank's death, Delea attended a meeting of the surviving directors, Joe, Victor and Eugene. The question was raised, by whom is not clear, what they "should do for Annie". One of the directors suggested that they might put her on the payroll, but Delea said this could not be done unless she actually worked for the corporation. Delea told them they might pay her Frank's salary for two years and take it as a deduction on the corporation's income tax returns. It was agreed that this should be done, and Delea prepared the following statement and resolution which was adopted as part of the minutes of the directors' meeting of April 15, 1955:

> "The question was then raised as to the situation of Anna Corasaniti, the widow of Frank Corasaniti, the former president of the company. After the discussion, it was moved and seconded that:

> "The company pay unto Anna Corasaniti the sum of $600.00 per week for the next twenty-four months.

> "Upon being put to a vote, it was unanimously carried."

The brothers had formed no plan as to what should be done for the widow of any brother who might die nor as to what should become of his stock; there was no precedent for the action which was taken. Frank's 60 shares of stock are still held by the trustees under his will, and the Court accepts the testimony that the payments to Anna, which were made at the rate of $600 a week for two years, were not related to any sale of the stock to the survivors or to the corporation. The payments were made out of the general bank account, not the payroll account, were charged on the books to a special account, and were reported on the 1955 corporate income

tax return under "Other Salaries". No W-2 form was filed. In 1956 a foreman died, and the equivalent of his wages for two years was paid to his widow, partly in a lump sum to retire a mortgage on her home, the balance weekly. On the corporate returns for 1956 and 1957 the payments to the two widows were reported together as "Deceased Employees' Salaries Paid to Wives". Anna did not report the payments as income to her, but no gift tax returns were filed by her or by Arundel.

After termination of the payments in March 1957, Anna asked what more they were going to do for her. Nothing was then done. In September 1958, after John requested that dividends be declared, the brothers offered to pay $30,000 for the 60 shares of stock being held by the trustees under Frank's will, but this offer was refused and no counter-offer was made.

By December 31, 1957, Arundel's surplus had reached $468,000 and the IRS raised the question of unreasonable accumulation of surplus under secs. 531 et seq. of the IRC, 1954 (sec. 102 of the 1939 Code). A penalty of $75,000 was assessed. Arundel declared and paid its first dividend in December 1958, and since then dividends at the rate of $120 or $125 per share have been paid each year.

Undoubtedly the three younger brothers had great respect and affection for Frank during his life and after his death. The depth of their affection of Anna is not clear, but they certainly had sympathy for her after her husband's death and were conscious of the financial problems she faced, although they did not know exactly what assets she had. Their affection for her appears to have abated between Frank's death and the trial. The three brothers are not very articulate, but all three testified that the pay-ments to Anna were made "for" or "because of" or "to appreciate" the services Frank had rendered the corporation during his lifetime, and for no other reason. On the other hand, Delea, Anna and her son John testified to various statements made by the brothers during the month after Frank's death which would indicate that the reason for the payments was the desire of the brothers to "do something for" Anna. I find that the brothers' testimony was probably influenced by fear, implanted in them by their new attorney or their new accountant at some time in the past, of the possibility that the payments might be disallowed as a deduction to the corporation, although in fact the period of limitations has now run for the years in question.

## II. Dominant Reason for the Payments

This case presents the converse of the usual case. Ordinarily, the directors' resolution is drawn to be sure that the corporation gets the tax deduction, and often says that the payments are to be made "in consideration of" the decedent's services, sometimes adding "as additional compensation for",[1] whereas the directors testify that they intended a gift. Here, the resolution indicated that the payments were to be made because of "the situation of" the widow, and the directors testified that there was no reason for the payments other than the services of the decedent. Most of the appellate decisions indicate that the wording of the resolution is entitled to little weight, but in the instant case the Court cannot take the testimony of the brothers at face value, even though all of the testimony of Delea, Anna and John is not accepted as accurate.

Here, as in most cases where the widow or her children or her trustees do not control the company,[2] the underlying

---

1. See Kuntz' Estate v. U. S., 300 F.2d 849; Bounds v. U. S., 4 Cir., 262 F.2d 876.

2. In such a case the obvious motive is to get some money out of the corpora-tion tax free. Sympathy of the widow for herself would be an odd reason to allow the special tax treatment. See Poyner v. C. I. R., 4 Cir., 301 F.2d at 292, where the Fourth Circuit directed the

232

motives are recognition of and appreciation for the services rendered by the decedent; the immediate motives include sympathy for the widow and a desire to assist her in her financial problems. No doubt the brothers also felt that the payments would help put off the evil day when they would have to give serious consideration to paying dividends on the capital stock. But the Court infers from the basic facts, from observation of the witnesses and consideration of all the evidence, and applying whatever "experience with the mainsprings of human conduct"[3] the Court may possess, that the dominant reasons or motives for the payments were sympathy for a respected brother's widow and a desire to assist her in her financial problems.

### III. Decision

■ Those dominant reasons or motives require "gift treatment and an escape from taxation under section 102" of the 1954 Code, rather than "income treatment and taxation under section 61." Poyner v. C. I. R., 4 Cir., 301 F.2d 287, 290; Bounds v. U. S., 4 Cir., 262 F.2d 876, so far as it may still be the law since Commissioner v. Duberstein, 363 U. S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218; Kuntz' Estate v. U. S., 8 Cir., 300 F.2d 849; U. S. v. Frankel, 8 Cir., 302 F.2d 666; Olson's Estate v. C. I. R., 8 Cir., 302 F.2d 671. Cf. Martin v. C. I. R., 3 Cir., 305 F.2d 290; Smith v. C. I. R., 3 Cir., 305 F.2d 778. It is unnecessary to repeat here the discussion of Bogardus v. Commissioner, 302 U.S. 34, 58 S.Ct. 61, 82 L.Ed. 32, and Commissioner v. Duberstein, supra, contained in those cases.

Tax Court to consider, inter alia, who controlled the stock of the corporation at the time the resolution for the payments was adopted.

■ The fact that the payments were made in recognition of the services rendered to the corporation by the decedent does not require that they be treated as income by the widow, even if it permits their deduction by the corporation as ordinary business expenses.

■ The conclusion that receipt of the payments may be treated by Anna as a gift is supported, though not required by the following facts: that they were made to the widow and not the estate; that there was no obligation on the part of the corporation to pay any additional compensation to Frank; that the corporation derived no direct benefit from the payments, though the directors were relieved of possible embarrassment; that the wife performed no services for the corporation; and that his services had been fully compensated. The absence of legal or moral obligation does not establish a gift, Duberstein, supra, and the five factors listed in Luntz[4] are no longer the exclusive criteria, as the Fourth Circuit noted in Poyner. Here, however, the five are supported by other factors, which show the intention of the directors to make a gift to the widow.

The absence of a plan also supports that conclusion. Now that two key employees have been treated in the same way it will no doubt be more difficult for the next widow, for the government will argue an established practice and benefit to the corporation. This is but one of the many unsatisfactory features of the present situation, which works inequalities based upon more or less important incidents, more or less candid testimony, and more or less sympathetic judges.

3. Commissioner v. Duberstein, 363 U.S. 278, 289, 80 S.Ct. 1190, 4 L.Ed.2d 1218.

4. 29 T.C. 647, 650.