Elizabeth J. FROEHLINGER, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. No. 12420.

United States District Court
D. Maryland.

May 8, 1963.

Joshua W. Miles and D. Sylvan Friedman, Baltimore, Md., for plaintiff.

Joseph D. Tydings, U. S. Atty. of Baltimore, Md., J. Mitchell Reese, Jr., and Bernard J. Schoenberg, Attys., Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Edward S. Smith, Lyle M. Turner and Philip R. Miller, Attys., Dept. of Justice, on the brief), for defendant.

THOMSEN, Chief Judge.

This is an action for the recovery of income taxes alleged to have been erroneously and illegally collected from plaintiff, who is the widow of a deceased officer of the Arundel Corporation. The taxes in question were based upon certain quarterly payments made to her by Arundel in a total amount approximately equal to her husband's salary for one year.[1] The specific issue is whether the payments made during the years 1956 and 1957 constituted taxable income to the widow under sec. 61, I.R.C.1954, or a gift excludable under sec. 102. Evidence of a policy to make such payments to the widows of deceased officers is the principal factor which distinguishes this case from Bounds v. United States, 4 Cir., 262 F.2d 876; Poyner v. C. I. R., 4 Cir., 301 F.2d 287, and Corasaniti v. United States, D.Md., 212 F.Supp. 229. See Gaugler v. United States, 2 Cir., 312 F.2d 681, aff'g S.D.N.Y., 204 F.Supp. 493, and cases cited in those opinions. As in Corasaniti, this Court will follow the three steps toward reaching a conclusion prescribed by Poyner.

1. The corporate resolution authorized payment to Mrs. Froehlinger in the amount of $50,000, of which $5,000 was paid during 1955 and was properly excluded from gross income as employee death benefits under sec. 101(b), I.R.C.1954. $20,000 was paid during 1956 and $20,000 during 1957. These payments were included by Mrs. Froehlinger in her tax returns for those years as part of her gross income, and a tax was paid thereon. The taxes paid on this $40,000, amounting to $17,879.88 ($8,659.67 for 1956 and $9,220.21 for 1957), are the monies which she now seeks to have refunded. Claims for refund were timely filed. The final $5,000 was paid by Arundel during 1958 and was not included by Mrs. Froehlinger in her tax return for that year as a part of her gross income. A statutory notice of deficiency with respect to this $5,000 was issued on July 3, 1961, but that payment is not a part of this proceeding.

## I. Basic Facts

All of the basic facts are stipulated, and may be summarized as follows:

Plaintiff's husband, Richard A. Froehlinger, died on September 8, 1955. He had been employed by Arundel and its predecessors for 44 years and had been its president since 1941.

Arundel is a Maryland corporation, chartered in 1919, engaged in dredging, quarrying, processing and sale of sand, gravel, stone and other materials, and in engineering construction. Its stock is publicly held, no one holding more than 6,000 shares out of a total of 438,375. In 1955 Mrs. Froehlinger owned 1,500 shares, her husband 600. Arundel's revenues in that year were $34,261,000, its net income $1,554,000. Froehlinger's annual salary was $48,000; it has been fully paid to the date of his death.[2]

On September 20, 1955, the board of directors adopted the following resolution:

> "The Chairman reported that the Executive Committee, at its meeting immediately preceding this Board meeting, in recognition of the many years of association of Mr. Richard A. Froehlinger with the corportion, and the long and faithful services rendered by him to the Corporation, recommended that it would be both a deserving and grateful gesture for the Board to appropriate $50,000 to be paid by the Corporation to Elizabeth J. Froehlinger, his widow, in instalments of $5,000 each on the first day of October, 1955, and quarterly thereafter. On motion duly made, seconded and carried, the recommendation of the Executive Committee was adopted."[3]

Mrs. Froehlinger had never been an officer, director or employee of Arundel, had never rendered any services to it, and she was not related to any corporate officer of Arundel. No payments were made by Arundel to any relative of the deceased other than his widow.

Arundel deducted the payments made to Mrs. Froehlinger as business expenses on its income tax returns. On its books the corporation treated the payments as either "Miscellaneous" or "Pension" expenses.

As of September 20, 1955 no formal death benefit or retirement plan had been adopted by Arundel, but pursuant to resolutions of the board of directors payments had been made to the widows of all officers who had died during the period 1943–55. J. G Kuhn, a vice president, had died in 1943, after serving the company 24 years. His widow received $18,000, the amount of his annual salary at the time of his death. J. N. Seifert, the treasurer, died in 1945, after 26 years of service. His widow also received $18,000, the amount of his annual salary. J. V. Hogan, a former president, who had retired in 1941, died in 1951. His widow received a relatively small amount. Froehlinger had served 44 years, the last 14 as president. His widow received $50,000, which was slightly in excess of his yearly salary at the time of his death. Payments to widows of deceased employees other than officers were made on an individual basis, some widows receiving post mortem payments and some

2. His statutory gross estate amounted to $202,619.63, the bulk of which was left to Mrs. Froehlinger.

3. The Executive Committee of the Board of Directors used similar language in recommending that the Board adopt the resolution: "The Chairman called to the attention of the Committee the many years of association of Mr. Richard A. Froehlinger with the corporation and the long and faithful services rendered by him to the corporation, and suggested that it would be both a deserving and grateful gesture for the Committee to recommend to the Board, and that the Board appropriate a sum of money for the benefit of Elizabeth J. Froehlinger, his widow. On motion duly made, seconded and carried, the Committee resolved that its recommendation be submitted to the Board whereby $50,000 be appropriated by the Board to be paid by the Corporation to Elizabeth J. Froehlinger in instalments of $5,000.00 each on the first day of October, 1955, and quarterly thereafter."

not.[4] The amount to be paid to any widow was not fixed prior to the employee's death and the employee had no enforceable right to any such payment.[5]

After the decision in Poyner, a supplemental stipulation was filed, containing statements of what would be said by C. Warren Black, now president and chairman of the board of Arundel, and F. Murray Benson, an attorney, a member of the board of directors and of its executive committee, if they were called as witnesses. Black, who presided at the meetings of the executive committee and of the board of directors, would testify in pertinent part:

"In voting to recommend and authorize the payments to Mrs. Froehlinger, I was motivated by the reasons stated in the resolution of the board of directors adopted at the meeting held on September 20, 1955. The fact that similar payments had been made to widows of Messrs. Kuhn and Seifert, and to widows of certain other employees following their deaths was known to me, and was also one of the factors which motivated me in voting to recommend and authorize the payments to Mrs. Froehlinger.

"At the time the payments to Mrs. Froehlinger were authorized, I was aware of the fact that Arundel Corporation had no formal retirement or pension plan. When I became president of the corporation one of my first actions was to take steps to have the company adopt a formal plan, which, among other things, permits employees to elect to have payments made to their widows if they die while in the employ of the company. This plan was put into effect about a year after I became president. The fact that there was no such formal plan covering Mr. Froehlinger or his widow was also one of the factors which motivated me in voting to recommend and authorize the payments to Mrs. Froehlinger.

"At the time the payments to Mrs. Froehlinger were recommended and authorized, I considered that the payments would benefit the corporation in promoting good employee relations. This was for the reason that awareness by our employees that the corporation had taken this action in recognition of Mr. Froehlinger's dedicated service to the company should encourage them to emulate his example. This benefit to the company was another factor considered by me in voting to recommend and authorize that such payments be made. It is unlikely that I would have recommended a payment out of corporate funds which I felt would not benefit the company in any way.

"In voting to recommend and authorize the payments to Mrs. Froehlinger, neither the executive committee nor the board of directors made an investigation to ascertain the financial circumstances of Mrs. Froehlinger. My belief at the time was that Mr. Froehlinger was not a rich man."

Mr. Benson would testify:

"In voting for the payment, I was motivated by the language of the statement of management proposing said pay-

4. In addition to the four officers listed above, available records show that 22 other employees died. Nine widows received death benefits and 13 did not. No clear policy with respect to such payments to employees other than officers is discernible. Appropriations resulting from the death of employees other than officers were handled administratively by Arundel's management, with the specific authority of the Executive Committee.

5. None of the officers or employees to whom such payments were made was covered by any form of deferred compensation or life insurance paid for by the corporation other than group life insurance up to $10,-000, which was partially paid for by the employee. However, in August 1956, there was inaugurated a formal group life insurance procedure and a formal retirement plan for salaried employees, whereby the beneficiaries of the deceased employees were treated in accordance with the then established formalized procedure, which was "tied in with the amount of the basic annual salary of the employee as to the amount of the insurance". Prior to 1957 pensions had been provided for most but not all retired salaried employees who had been with the corporation for a long period of time and held responsible positions at the time of retirement.

ment to the Executive Committee and by the action of the Executive Committee when the matter came before the Board of Directors.

"I was familiar with the financial condition of Mr. Froehlinger, having represented him personally before his death, and having prepared Codicils to his Will and Amendments to his Trust Agreement. I knew that the discontinuance of his salary from The Arundel Corporation would withdraw from Mrs. Froehlinger the most substantial portion of the support which she had enjoyed prior to her husband's death."

*Dominant Reasons for the Payments*

■■ As the Supreme Court noted in Commissioner v. Duberstein, 363 U.S. 278, 285, 80 S.Ct. 1190, 4 L.Ed.2d 1218, if the dominant reason for a payment is a "detached and disinterested generosity" (Commissioner v. LoBue, 351 U.S. 243, 246, 76 S.Ct. 800, 100 L.Ed. 1142), arising "out of affection, respect, admiration, charity or like impulses" (Robertson v. United States, 343 U.S. 711, 714, 72 S.Ct. 994, 996, 96 L.Ed. 1237), gift treatment is required. However, if a payment proceeds primarily from "the constraining force of any moral or legal duty" or from "the incentive of anticipated benefit" of an economic nature, the payment must be considered as income (Bogardus v. Commissioner, 302 U.S. 34, 41, 58 S.Ct. 61, 82 L.Ed. 32). See also Poyner v. C. I. R., 4 Cir., 301 F.2d 287, and Gaugler v. United States, 2 Cir., 312 F.2d 681.

After considering all relevant factors, the Court concludes that in the instant case the dominant reasons for the payments to the plaintiff were not disinterested generosity, affection or respect for her, but the moral obligation to continue the informal plan or policy of payments to officers' widows and the anticipated benefit of good employee relations arising therefrom.

This conclusion is supported not only by the statement of Black, Arundel's new president, quoted above, but also by the fact that Mrs. Froehlinger was treated in substantially the same way as the widows of the two other officers, Kuhn and Seifert, who had died in office, by the wording of the resolutions, by the way the payments were treated on the books of the corporation, by the fact that the payments were made by a widely owned business corporation and that sound business reasons were considered in making them, and by the corporation's failure to investigate the actual financial circumstances and needs of the widow. It is true that Benson, the attorney, knew her general financial situation, but in the stipulation of his proposed testimony it is not stated that this was a consideration affecting his vote, much less that of the other directors.

Here, as in all such cases, some of the Luntz[6] factors, referred to in Poyner,[7] favor the taxpayer: (1) the payments were made to the widow of the deceased employee and not to his estate; (4) she performed no services for the corporation; and (5) the services of her husband had been fully compensated. On the other hand, (2) there was a moral obligation on the corporation to continue the policy of payments to widows of officers; and (3) the corporation derived a benefit from the payments "in promoting good employee relations", as stated by the new president, Black. The absence of any evidence to show such a policy or benefit was noted by the Fourth Circuit in Bounds v. United States, 262 F.2d 876, 881.

*Decision*

The conclusion with respect to the dominant reasons for the payments to plaintiff requires "income treatment under sec. 61" rather than "gift treatment and an escape from taxation under section 102". Poyner v. C. I. R., supra. The decision is supported by the principles stated in Commissioner v. Duberstein, supra, and Bogardus v. Commissioner, supra, and followed in Gaugler v. United States, supra, and Simpson v. United States, 7 Cir., 261 F.2d 497. See also the

---

6. Florence S. Luntz, 29 T.C. 647, 650.

7. 301 F.2d at 291.

discussion of Poyner in the District Court opinion in Gaugler, S.D.N.Y., 204 F.Supp. 493, 504. Cf. Reed v. United States, W.D.Ky., 177 F.Supp. 205, aff'd 6 Cir., 277 F.2d 456.

The Clerk is instructed to enter judgment in favor of the defendant, without costs.