**Lucy H. HARPER, Plaintiff-Appellee,**

v.

**UNITED STATES of America,
Defendant-Appellant.**

**No. 26410.**

United States Court of Appeals,
Ninth Circuit.

Dec. 2, 1971.

Kenneth L. Gross, Asst. U. S. Atty. (argued), Robert L. Meyer, U. S. Atty., Los Angeles, Cal., Johnnie Walters, Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D. C., Charles H. Magnuson, Asst. U. S. Atty., Los Angeles, Cal., for defendant-appellant.

J. Dan Olincy (argued), Los Angeles, Cal., for plaintiff-appellee.

Before CHAMBERS and CHOY, Circuit Judges, and BATTIN,* District Judge.

BATTIN, District Judge:

Appellant United States appeals from an order of the District Court, 314 F. Supp. 360, declaring that certain payments made by Graybar Electric Company, Inc., to Appellee Harper were gifts and therefore not subject to inclusion in gross income. Appellant argues that under Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960), the payments in question cannot be found to have been gifts and that they must therefore be included in the recipient's gross income.

Mr. Harper was an employee of Graybar Electric Company until his death in 1954. At the time of his death, voting trust certificates representing 5,640 shares of Graybar common stock, issued to Mr. Harper, were held as community property by Mr. Harper and Appellee, Lucy Harper, his wife. The stock was subject to a restrictive agreement which required that, upon the death of the employee stockholder, the stock be offered to Graybar at its par value, $20 per share. Graybar exercised its option in this instance on March 11, 1955, and paid decedent's estate $12,800. The shares, for estate tax purposes, were valued at par value.

In 1958 and 1959, Mrs. Harper received from Graybar the sums of

---

* The Honorable James F. Battin, United States District Judge, District of Montana, sitting by designation.

$23,688 and $26,508, respectively, under Section 8 of Graybar's "Plan for Employees' Pensions, Disability Benefits, and Death Benefits." This plan provided in substance that Graybar could make payments, at its election, for five years to the estate or beneficiaries of a deceased stockholder in amounts representing the cash dividends which would have been paid on his stock had it not been redeemed. The plan also provided that these benefits were not payable unless dividends were declared and paid, and then only if, and to the extent, authorized by the Board of Directors pursuant to a recommendation of a committee. The plan specifically stated that there was no right to payment, either legal or equitable, and that action or inaction of the committee or board in any one case did not constitute a precedent or give rise to any obligation in any other case.

Under the plan, the committee, composed of Graybar's president and certain other employees, recommended to a board of directors that the beneficiaries, generally the widow, of a deceased employee, whose stock had been repurchased, should receive payments equal to the dividends. The payments were at the discretion of the board and no person had any right to receive payment. While, during the years 1955 to 1959, Graybar opted to make the special death benefit payment in almost every situation involving eligible individuals, payment was not made in all cases.

■■ The Supreme Court in *Duberstein, supra,* ruled that the finding of a gift for income tax purposes

" . . . must be based ultimately on the application of the fact-finding tribunal's experience with the mainsprings of human conduct to the totality of the facts of each case." 363 U.S. at 289, 80 S.Ct. at 1198.

The Court added that because of the variety of factors which could be involved and the nontechnical nature of the factors, the decision of the trier of fact must be given heavy weight. Thus, in a case where the court is the trier of fact, its decision can only be overruled where it is clearly erroneous.

■ In reviewing its previous decisions, the Court approved the following test for determining whether a gift has been made:

"A gift in the statutory sense, on the other hand, proceeds from a 'detached and disinterested generosity,' Commissioner [of Internal Revenue] v. LoBue, 351 U.S. 243, 246 [76 S.Ct. 800, 803, 100 L.Ed. 1142]; 'out of affection, respect, admiration, charity or like impulses.' Robertson v. United States, [343 U.S. 711], 714 [72 S.Ct. 994, at page 996, 96 L.Ed. 1237.] And in this regard, the most critical consideration, as the Court was agreed in the leading case here, is the transferor's 'intention.' Bogardus v. Commissioner [of Internal Revenue], 302 U.S. 34, 43 [58 S.Ct. 61, 65, 82 L.Ed. 32]. 'What controls is the intention with which payment, however voluntary, has been made.' *Id.,* [302 U.S.] at 45 [58 S.Ct. at page 66] (dissenting opinion)." 363 U.S. at 285–286, 80 S.Ct. at 1197.

In Poyner v. C. I. R., 301 F.2d 287 (4th Cir. 1962), the *Duberstein* holding of the Supreme Court was applied to a case similar to the case at bar. In that case, the widow of a deceased employee received payments under the authority of a resolution of the Board of Directors of the deceased husband's employer. This resolution, however, was not made pursuant to any plan or program of the employer-corporation. The Tax Court had earlier ruled that the facts showed that the dominant intent of the corporation was to pay additional compensation for the services of the decedent. Estate of Mervin G. Pierpont, 35 T.C. 65 (1960).

■ The Circuit Court reversed this decision, finding that the stipulated facts before the Tax Court did not support its findings. The Court, citing Florence S. Luntz, 29 T.C. 647, 650 (1958), set forth the factors laid down

in *Duberstein* for determining whether a gift was made:

"'(1) the payments had been made to the wife of the deceased employee and not to his estate; (2) there was no obligation on the part of the corporation to pay any additional compensation to the deceased employee; (3) the corporation derived no benefit from the payment; (4) the wife of the deceased employee performed no services for the corporation; and (5) the services of her husband had been fully compensated.'" 301 F.2d at 291.

The Court noted that the *Poyner* facts spoke directly to all five of these factors, showing clearly that a gift was in fact intended.

■ Relating the facts of the instant case to those factors, it appears that a gift was made:

1. The payments were made to the wife of the deceased employee-stockholder, not to his estate;

2. Graybar had no obligation to make these payments, and in fact on previous occasions had decided not to make the payments to those persons qualified;

3. The corporation derived no benefit from the payments of an *economic* nature, *Duberstein*, 363 U.S. at 285, 80 S.Ct. 1190;

4. Mrs. Harper had never performed any services for Graybar; and

5. The services of the deceased employee-stockholder had been fully compensated during his life.

■ It is clear, therefore, that under the totality of facts, the payments made to Mrs. Harper fall within the definition of "gift" as set forth by the Supreme Court in *Duberstein*. Likewise, it cannot be said that the trial court was clearly in error in finding that the payments were a result of the generosity of Graybar, made without obligation, whether moral or legal.

Moreover, in Graybar Electric Company v. C. I. R., 267 F.2d 403 (2nd Cir. 1959), the Court of Appeals for the Second Circuit ruled that payments made under the Graybar plan in question did not constitute compensation for the services of deceased employees. The issue before the Court in *Graybar* was whether the payments in question were deductible by Graybar from its gross income as ordinary and necessary business expenses. The Court found that they were not, since they were not compensation for services. Instead, the payments were found to be attributes of the stock repurchased by Graybar from the estate of the deceased employee.

The significant effect of the decision is the finding that, contrary to the present position of the United States, the payments were not compensation.

The gift question presented in the instant case was not before the Tax Court or the Second Circuit Court of Appeals and was not considered. The opinion of the Tax Court, Graybar Electric Co., 29 T.C. 818 (1958), adopted by the Circuit Court, noted:

" . . . that the evidence more convincingly supports the conclusion that the payments were made with respect to the stock to supplement the disproportionately low price at which such stock was required to be offered for sale to petitioner [Graybar] after the death of the stockholder." 29 T.C. at 831.

■ This holding in Graybar that the payments were attributes of the stock, then, does not preclude the finding in the instant case that the payments were gifts. Although the payments were based on the stock, there was no obligation that they be made. Rather, it appears from the facts that they were made because of the generosity of the corporation, possibly as the trial court found "to make up to the [respondent] for some real or imagined loss occurring indirectly from the operation of the redemption plan." Harper v. United States, D.C., 314 F.Supp. 360, at 363.

Affirmed.