ALICE W. BROUGHTON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Broughton v. Commissioner
Docket No. 7708-72.
United States Tax Court
T.C. Memo 1975-119; 1975 Tax Ct. Memo LEXIS 255; 34 T.C.M. (CCH) 580; T.C.M. (RIA) 750119; April 30, 1975, Filed. F. Timothy *256 Nicholls, for the petitioner. Mathew E. Bates, for the respondent. TANNENWALD
MEMORANDUM OPINION TANNENWALD, Judge: Respondent determined the following deficiencies in petitioner's income taxes: Year
Deficiency
1968
$1,599.01
1969
1,153.47
1970
2,165.96
The parties have agreed on the disposition of some of the items raised in the petition. Remaining for decision is the factual question whether the amount of $3,000 paid to petitioner in each of the above years by the State of North Carolina is excludable from her income as a gift under section 102. [1]
All of the evidentiary facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in Raleigh, North Carolina, at the time the petition was filed. She is the widow of J. Melville Broughton (Broughton), a United States Senator, who died in 1949. From 1941 to 1945, Broughton was governor of North Carolina. In each of the years 1968, *257 1969, and 1970, petitioner received from the State of North Carolina the sum of $3,000, which she did not report as income. The payments were made under authority of N.C. Gen. Stat. sec. 147-32 (1974), which since 1955 has read as follows: § 147-32. Compensation for widows of Governors.--All widows of Governors of the State of North Carolina who shall make written request therefor to the Director of the Budget, shall be paid the sum of three thousand dollars ($3,000) per annum, in equal monthly installments, out of the State treasury upon warrants duly drawn thereon. Provided, that such compensation shall terminate upon the subsequent remarriage of such person. During the period 1941-1945, the statute read somewhat differently: § 147-32. Compensation for widows of Governors.--All widows of the Governors of the State of North Carolina who were married to said Governors before or during their term of office as Governor of the State of North Carolina and who have attained, or shall hereafter attain, the age of sixty-five years shall be paid the sum of twelve hundred ($1,200.00) dollars per annum during the term of their natural lives, the same *258 to be paid in equal monthly installments of one hundred ($100.00) dollars per month out of the State treasury upon warrant duly drawn thereon: Provided, that no payment shall be made under this section unless and until the Council of State shall find the beneficiary does not have an income adequate for her support. [N. Car. Laws ch. 416 (1937).] Broughton was paid an annual salary of $10,500 by the State during his term as governor. He was also enrolled in the state Teachers' and Employees' Retirement System and contributions made to his account, totalling $438.72, were withdrawn by him as of July 1, 1945. At the time of his death, the State owed him no additional salary on account of services rendered by him as governor. The payments which petitioner received were made directly to her and not to her husband's estate. She performed no services in connection with the payments, and none were expected of her. The State did not withhold any portion of the $3,000 annual payment for taxes. Prior to the years in issue, petitioner received an aggregate amount of at least $5,000. The payments to petitioner were in the nature of an annuity or pension and thus are specifically included *259 in gross income unless a statutory exemption can be found. Section 61(a)(9) and (11). The only exemption claimed by petitioner is that provided by section 102. The issue herein is a factual one and the petitioner has the burden of proof. Commissioner v. Duberstein,363 U.S. 278 (1960); Welch v. Helvering,290 U.S. 111 (1933); Frank v. United States, 260 F. Supp. 691, 695 (S.D.N.Y. 1966); Rule 142, Rules of Practice and Procedure of this Court. The governing criterion is the purpose or intention of the payor in making the payment. Bogardus v. Commissioner,302 U.S. 34 (1937). A gift proceeds from "detached and disinterested generosity," Commissioner v. LoBue,351 U.S. 243, 246 (1956), "out of affection, respect, admiration, charity or like impulses," Robertson v. United States,343 U.S. 711, 714 (1952). Since each case is ultimately controlled by its facts, an exhaustive listing of the relevant factors is not possible. See Poyner v. Commissioner,301 F. 2d 287, 291 (C.A. 4, 1962), vacating and remanding Estate of Mervin G. Pierpont,35 T.C. 65 (1960). *260 At the outset, we note we are not engaged in statutory construction in the ordinary sense, where legislative purpose is sought as a guide to the proper application of an ambiguous statute. Unquestionably, the North Carolina General Assembly intended that petitioner be entitled to receive $3,000 annually from the state treasury. In making our determination herein, it is necessary to look deeper into the collective mind -- in effect, to seek the purpose behind the purpose. The legislation in question was enacted against the backdrop of the following provision in the North Carolina Constitution: No person or set of persons are entitled to exclusive or separate emoluments or privileges from the community but in consideration of public services. [N.C. Const. of 1968, art. 1, sec. 7.] [2]
See Brown v. Board of Commissioners,223 N.C. 744, 28 S.E. 2d 104 (1943). It is entirely appropriate that we presume the North Carolina General Assembly did not intend to violate that provision, with the result that the payments involved herein were related to the rendition of services to the community -- in this case by Broughton. [3] See Harrill v. Teachers' & State Employees' Retirement System,271 N.C. 357, 156 S.E. 2d 702 (1967); *261 Great American Insurance Co., v. Johnson,257 N.C. 367, 126 S.E. 2d 92, 94 (1962); Bridges v. City of Charlotte,221 N.C. 472, 20 S.E. 2d 825 (1942). Since before Broughton took office, North Carolina has provided some form of pension to the widow of a former governor. The possibility of such a pension entered into the bundle of privileges and rewards held out by the state to induce qualified persons to enter into its employ and suggests that the legislation in question conformed to the constitutional limitation. Such circumstances indicate that the payments to petitioner were intended to represent additional compensation for Broughton's services to the state. See *262 Varnedoe v. Allen,158 F. 2d 467 (C.A. 5, 1946); Simpson v. United States,236 F. Supp. 433 (D. Conn. 1964); Anna E. Curtis,8 T.C. 266 (1947); Lottie Robinson,42 T.C. 403 (1964). [4] The existence of a plan or practice of making payments to the widows of deceased employees, in effect during the period of employment, has been held to negate any purely selfless motivation on the employer's part. See Tomlinson v. Hine,329 F. 2d 462 (C.A. 5, 1964); Varnedoe v. Allen,supra; Simpson v. United States,supra; Froehlinger v. United States,217 F. Supp. 13 (D. Md. 1963), affirmed per curiam, 331 F. 2d 849 (C.A. 4, 1964); Anna E. Curtis, supra.Cf. Bounds v. United States,262 F. 2d 876 (C.A. 4, 1958). Moreover, the establishment of a pension in favor of a class, not limited to petitioner and including individuals not yet ascertainable, tends to show the provision was not motivated by affection, respect, admiration, charity, or the like toward petitioner. *263 The element of petitioner's financial need has equivocal aspects at best. On the one hand, the presence of such an element in the legislation under which petitioner originally became entitled to payment favors petitioner's claim herein. On the other hand, the elimination of this element in the legislation under which the instant payments were made points in the opposite direction and suggests that the petitioner's circumstances were not the motivating force. See Tomlinson v. Hine,supra.[5]
Finally, we note that the payments involved herein were to continue until the death or remarriage of the recipient. Experience teaches that a single act of generosity is more likely to spring from unselfish motives than is an open-ended commitment to a large or indefinite number of such acts. Petitioner has offered in support of her position stipulated testimony of the sponsor of the present pension bill in the 1955 North Carolina General Assembly. The gist of this statement is that the legislature intended the widow's payments to be nontaxable gifts and that it had no motive other than detached and *264 disinterested generosity for its action. Of course, the mere intention that a transfer not be subject to income tax is insufficient to make it nontaxable. It is important also to bear in mind that the 1955 enactment was only a modification of a law first passed in 1937, possibly by an entirely different group of individuals. See Simpson v. United States,supra.Rather than engage in long-range mind-reading, we prefer to rely more heavily on the objective indicia of intention heretofore discussed. Petitioner also calls to our attention a favorable private ruling issued by respondent in 1946 to the Attorney General of Indiana with regard to a similar widow's pension law. [6] She does not claim to have relied on this ruling to her detriment, nor does it appear that she has done so. Her argument is that: "It is inequitable and anomalous for the Commissioner to rule that payments under one statute to widows of former governors constitute gifts, but then contend that payments under another almost identical statute are taxable income to the recipients." We have no way of determining respondent's current posture regarding payments to widows of Indiana governors. The *265 cited ruling is carefully limited by its terms to the widows of governors who held office at or prior to the time when the Indiana law was first adopted. Because petitioner is not similarly situated with respect to the North Carolina statute, her argument fails in the premise. Nor can such an isolated ruling dealing with a fact situation be accorded the weight sometimes given to respondent's rulings as an aid to the construction of the meaning of the words of the statutory provision involved. See Hanover Bank v. Commissioner,369 U.S. 672, 686-687 (1962). Moreover, we have often held that courts are not bound by even a published ruling of respondent which is not in accord with what is found to be the proper application of the particular statutory provision. See Ronald C. Packard, 63 T.C. (Mar. 11, 1975); Katherine F. Miller,39 T.C. 505, 508 (1962), affd. 327 F. 2d 846, 850 (C.A. 2, 1964). *266 In sum, we hold that petitioner has not carried her burden of proof that the pension she received was a gift in the statutory sense. Consequently, the amounts she received constituted taxable income to her. To reflect the parties' agreement on other issues, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
2. Now N.C. Const., art. I, sec. 32↩.
3. Cox v. Kraemer,88 F. Supp. 835 (D. Conn. 1948), cited by petitioner, is inapposite. There the taxpayer received reimbursement of expenses pursuant to special and after-the-fact legislation. Furthermore, we believe that the court's conclusion that the payments involved were nontaxable gifts is inconsistent with its statement that they were made pursuant to a "moral obligation." Id.↩ at 837.
4. See also Edith L. Joyce,T.C. Memo. 1966-175; Irene M. Waters,T.C. Memo. 1963-252↩.
5. See also Edith L. Joyce,supra↩ n. 4.
6. Ind. Code § 4-3-3-1↩ (1971). The ruling is reported unofficially in 4 CCH 1946 Stand. Fed. Tax Rept. sec. 6241 and in Official Opinion No. 59, p. 213 [1946] Opinions of the Attorney General of Indiana.