ESTATE OF EDWARD BAUSCH, DECEASED, M. HERBERT EISENHART AND JOSEPH F. TAYLOR, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ESTATE OF WILLIAM BAUSCH, DECEASED, M. HERBERT EISENHART AND JOSEPH F. TAYLOR, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 20744, 20745.   Promulgated June 30, 1950.

*Scott Stewart, Jr., Esq.*, for the petitioners.
*Michael Waris, Jr., Esq.*, for the respondent.

OPINION.

BLACK, *Judge*: So far as we can see there is no real controversy between the parties as to the facts in the instant case. The controversy is as to payments of $10,500 which the estate of Edward Bausch received and $15,000 which the estate of William Bausch received from the Bausch & Lomb Optical Company in the year 1945. Both of these decedents had served the company in important capacities for a period of 50 years, and at the time of their death each was receiving $1,500 a month. By direction of the president and treasurer of Bausch & Lomb Optical Company these salaries were continued for 12 months after the date of the death of each decedent and were paid to the legal representatives of each decedent.

The Commissioner has determined that the amounts received by each of the estates in 1945 are taxable to the respective estates under sections 22 (a) and 126 of the Internal Revenue Code. Section 22 (a)

is so familiar that it need not here be quoted. Section 126 is printed in the margin.[1]

Petitioners contend that the amounts in question are not taxable under the provisions of section 22 (a) and section 126 relied upon by respondent but represented gifts made by the company to the estate of each decedent and are exempt from taxation under section 22 (b) (3), which excludes from taxable income: "The value of property acquired by gift, bequest, devise, or inheritance." Petitioners rely strongly on our recent decision in *Louise K. Aprill*, 13 T. C. 707. In that case we held that payments, made to the taxpayer Louise K. Aprill by a corporation, Frerichs Lumber Co., Ltd., which was formerly managed and directed by her deceased husband Anthony Aprill, without obligation on the part of the corporation to make such payments and intended by it, in reliance on I. T. 3329, as gifts to her individually, were not taxable to Louise as either compensation for personal services or distribution of profits. I. T. 3329, 1939-2 C. B. 153, to which we referred in that case, held that payments made in 1937 and 1938 by the M Company to the widow of an officer-stockholder who died in January, 1937, though not required to be made by any contractual obligation, are deductible by the corporation as business expenses. Such amounts are gifts to the widow and, therefore, are not taxable income to her. The concluding part of such ruling by the Commissioner reads:

> The amounts constitute gifts to B and are therefore not taxable income to her. With respect to the sum received by her in 1938, the fact that it is termed "pension" does not exclude it from consideration as a gift since the terms "pension" and "gift" are not mutually exclusive. When an allowance is paid by an organization to which the recipient has rendered no service, the amount is deemed to be a gift or gratuity and is not subject to Federal income tax in the hands of the recipient.

In the *Aprill* case, in our findings of fact, we pointed out that the corporation, Frerichs Lumber Co., Ltd. had been advised by its auditor

---

[1] SEC. 126. INCOME IN RESPECT OF DECEDENTS.

  (a) INCLUSION IN GROSS INCOME.—

  (1) GENERAL RULE.—The amount of all items of gross income in respect of a decedent which are not properly includible in respect to the taxable period in which falls the date of his death or a prior period shall be included in the gross income, for the taxable year when received, of:

  (A) the estate of the decedent, if the right to receive the amount is acquired by the decedent's estate from the decedent;

  \*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

  (3) CHARACTER OF INCOME DETERMINED BY REFERENCE TO DECEDENT.—The right, described in paragraph (1), to receive an amount shall be treated, in the hands of the estate of the decedent or any person who acquired such right by reason of the death of the decedent, or by bequest, devise, or inheritance from the decedent, as if it had been acquired by the estate or such person in the transaction by which the decedent acquired such right; and the amount includible in gross income under paragraph (1) or (2) shall be considered in the hands of the estate or such person to have the character which it would have had in the hands of the decedent if the decedent had lived and received such amount.

  \*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

of I. T. 3329 and that in voting the payments to Mrs. Aprill after her husband's death, it was the intention to follow the language and requirements of I. T. 3329 and make a gift to her. The payment was voted by the board of directors of the corporation and ratified by the stockholders.

The question we have to decide is whether *Louise K. Aprill, supra,* is controlling here. We do not think it is. The distinction between the two cases may be a narrow one but, nevertheless, we think it exists. Neither Edward Bausch nor William Bausch left a widow—they were unmarried at the time of their deaths. The payments in question were made to their respective estates.

The Commissioner in support of his contention that the amounts in question are taxable to petitioners under section 22 (a) and section 126 of the Code strongly relies on *Estate of Edgar V. O'Daniel,* 10 T. C. 631, affd., 173 Fed. (2d) 966. In that case the decedent had been employed by a company which had a bonus plan in which the decedent had participated for a number of years. No employee had any enforceable right to any allotment for the current year under the plan until his share was designated by the proper officer. No share of the bonus for 1943 was designated for the decedent until March 14, 1944, several months after his death. It amounted to $28,143.65 and was paid to his estate on March 16, 1944. The estate did not report that amount as income on its return for 1944, but the Commissioner added it to the estate's income in determining the deficiency for that year. The Tax Court held that the Commissioner acted correctly even though the decedent never had any legally enforceable right to the bonus during his life. Our decision was affirmed by the Second Circuit, the court stating in its opinion:

\* \* \* It is true that the decedent would not have had a legally enforceable right to receive the foregoing amount until it was allocated by the American Cyanamid Company, but the payment clearly represented compensation for his services and any right to receive it that was realized by his estate was acquired through him and never arose in any other way or through any other source. \* \* \*

It is true, as the petitioners contend, that the facts in the instant case are not the same as the facts in the *O'Daniel's Estate* case, *supra.* In the *O'Daniel's Estate* case the payment to the estate was the amount of a bonus voted to decedent after his death. In the instant case the payments to the respective estates were for the continuation of salaries for each decedent for a 12-month period after his death. Notwithstanding these differences in facts, we think the controlling principle is the same. Here, as in the *O'Daniel's* case, the payments were made to the estates of decedents and would undoubtedly have been taxable to decedents as compensation for past services if they had been living

when the payments were made. Here the payments were not made to decedents' widows, as in the *Aprill* case, *supra*, but were made to the legal representatives of decedents' estates. Cf. *Brayton* v. *Welch*, 39 Fed. Supp. 537, 28 AFTR 43 (U. S. D. C. Mass.).

The *Brayton* v. *Welch* case involved the question whether payments made by three corporations to the estate of a deceased officer and director were compensation for services rendered and consequently taxable as income or whether such payments represented gifts and were not taxable to the administratrix of the estate. The United States District Court for the District of Massachusetts held that such payments represented taxable income to the estate. The court, in so deciding, said, among other things, as follows:

The real intention of the directors in making the discussed payments is a question of fact determinable on all the circumstances surrounding the transaction. In the present case, the language of the vote; the failure of the directors to submit the vote to the stockholders for ratification; the confirmation of the intention to make the payments as salaries as expressed in the vote by the deductions claimed in the corporate income tax returns; and the form of the payments, i. e., to the estate of the deceased and not members of the family, point to the conclusion that the directors, in making the payments, intended them as additional payment for faithful services already performed by the deceased and which contributed so much to the success of the respective enterprises. These considerations to my mind far outweigh the testimony of the directors who testified at the trial that the payments were intended as gifts.

With reference to *Brayton* v. *Welch*, petitioners say in their reply brief as follows:

*   *   *   The only distinction between the instant case and the *Aprill* case is that in the instant case the decedent left no widow and, therefore, the payments were made to his estate. It is submitted that this is a distinction without a difference, and if that was the ground for taxing the payments in the case of *Brayton* v. *Welch*, *   *   *   then the *Brayton* case was wrongly decided.

We do not think *Brayton* v. *Welch* was wrongly decided but that, on the contrary, it was decided in accordance with the weight of authority. We think there is a distinction between payments made to the estates of deceased officers of a corporation such as we have in the instant case and was present in *Brayton* v. *Welch* and payments made to the widow of an officer of a corporation under the circumstances which existed in the *Aprill* case, *supra*. The distinction, as we have already said, may be a narrow one; nevertheless, it is one which has been recognized.

We think that the weight of authority supports respondent's determination that such payments as we have here represent taxable income to petitioners and we so hold.

Reviewed by the Court.

*Decisions will be entered for the respondent.*