ESTATE OF FRANK J. FOOTE, DECEASED, FIRST BANK AND TRUST COMPANY OF SOUTH BEND, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 59678. Filed May 29, 1957.

*James F. Thornburg, Esq.,* and *Casimer J. Major, Esq.,* for the petitioner.

*John M. Webb, Esq.,* for the respondent.

TIETJENS, *Judge:* The Commissioner determined a deficiency in income tax for the period August 9, 1951, to December 31, 1951, in the amount of $2,922.66.

The question for decision is whether the sum of $9,968.83 paid by a corporation to the estate of its deceased president (the estate being the petitioner) is taxable income of the estate as additional compensation or is excludible from gross income as a gift.

FINDINGS OF FACT.

Some of the facts are stipulated, are so found, and the stipulation of facts, together with the pertinent exhibits, is included herein by reference.

Petitioner is the Estate of Frank J. Foote. First Bank and Trust Company of South Bend is the duly appointed executor thereof. Petitioner filed its income tax return for the taxable period with the then collector of internal revenue for the district of Indiana at Indianapolis, Indiana.

Frank J. Foote, hereafter called the deceased, was actively employed by Martin Machine Co., Inc. (hereafter called the corporation), from about December 30, 1942, until his death on August 9, 1951. He was both a director and president of the corporation. His salary was $35,000 per year. At his death there was unpaid

salary due from the corporation in the amount of $414.51 which was thereafter paid to petitioner. No other amount was owing by the corporation to the deceased at the time of death, nor was there any contractual obligation or understanding on the part of the corporation to pay any amount by way of compensation or otherwise to the estate of the deceased or to anyone on his behalf thereafter.

At the time of the death of the deceased the common capital stock of the corporation consisted of 3,000 shares divided into two classes, viz: 1,500 class A shares without voting rights and 1,500 class B shares with such rights. The deceased owned 750 shares of class B stock and 110 shares of class A. Herbert J. Bowman owned like amounts. The respective wives of these men each owned 140 shares of the class A stock; the remainder of the class A stock was owned 100 shares each by five of the deceased's children by a previous wife and by five of Bowman's children. There was no relationship by blood or affinity between the Foote and Bowman families.

In 1951 the corporation had no established pension program or bonus system for payment of gratuitous death benefits to the beneficiaries of deceased employees or officers and prior to the payment hereinafter described to petitioner no death benefits of any kind had been paid to any of its deceased employees or officers.

The deceased left Lena Foote, his second wife, surviving. They had no children by their marriage. Lena had children and lineal descendants by virtue of a prior marriage. The family relationship between the two groups of children was not good. The board of directors of the corporation knew of this family situation.

On September 2, 1950, the deceased executed a will creating a testamentary trust whereby Lena was to receive only the income for life with the remainder going to the children of the deceased rather than to Lena's children. First Bank and Trust Company is the executor under this will.

A special meeting of the board of directors of the corporation was held on December 6, 1951, all directors being present. The pertinent portions of the minutes recorded at the meeting are as follows:

The President stated he thought that recognition should be given by the board of directors and the company for the wonderful memory and esteem in which all associated with the company hold for our lately deceased President, Frank J. Foote. In order that his family might know, in a tangible way, the very real appreciation in which we hold his memory and with the intent and in the purpose that his family shall be remembered through and on account of our esteem for him, Mr. Bowman, as acting President, proposed that the following resolution be sponsored, and, upon motion by Doris Daniel, seconded by Ralph Foote, the following resolution was unanimously adopted:

BE IT RESOLVED that the passing of our esteemed friend and President, Frank J. Foote, be memorialized through the payment by this company at this time of a gratuity for the benefit and use of his family in an amount of money in cash

equal to that which his salary would have amounted to had he lived from the date of his decease to the end of this year 1951, and that such amount of gratuity be paid to First Bank and Trust Company of South Bend as executor of his estate in order that it may result in benefit and comfort to all members of his family who were remembered by him under his will.

This action was ratified by the stockholders on March 3, 1952.

The books and records of the corporation maintained and kept in the normal course of its business reflect that after December 6, 1951, and prior to January 1, 1952, the corporation paid to the executor under the will of the deceased the sum of $9,968.83, which was the amount authorized for payment by the directors' meeting of December 6, 1951. The books and records further reflect that the deceased had been paid his full compensation to and including the last payroll date of the corporation occurring prior to his demise, at his then applicable compensation rate of $35,000 per annum.

It is stipulated that neither the decedent nor the petitioner herein performed any services to or for Martin Machine Co., Inc., from the time of the demise of decedent in exchange for or in consideration of the payment of $9,968.83.

The books and records of the corporation also reflect that it took a deduction for the payment as a business expense against its gross income in computing its Federal net income tax and excess profits tax liability for its taxable year ended December 31, 1951.

The entire payment of $9,968.83 was transferred into the testamentary trust established by the deceased with the income therefrom going to his widow for life and the remainder to his own five children and a granddaughter who had lived in his home during childhood.

### ULTIMATE FINDING.

The payment of $9,968.83 by the corporation was a gift and did not constitute additional compensation for services rendered by the deceased.

### OPINION.

As put in the Commissioner's brief the question is whether "this payment constitutes taxable income to the estate under Sections 22 (a) and 126 of the Internal Revenue Code of 1939" or whether "this payment was a gift and is thus excludable from gross income under Section 22 (b) (3) * * *."

The answer to this question depends on the intention of the parties, particularly that of the employer. See *Fisher* v. *Commissioner*, 59 F. 2d 192 (C. A. 2). And this in turn depends upon the facts of the particular case. See *Alice M. Macfarlane*, 19 T. C. 9; *Estate of*

*Arthur W. Hellstrom*, 24 T. C. 916. Accordingly, our ultimate finding that the payment was a gift disposes of the question.

The Commissioner contends, however, that the fact that the payment was made to the estate of the deceased rather than to the widow or some other beneficiary should lead to the conclusion that the payment was compensatory in nature and not gratuitous. He relies on *Estate of Edward Bausch, et al.*, 14 T. C. 1433, affd. 186 F. 2d 313 (C. A. 2), in which *Louise K. Aprill*, 13 T. C. 707, was distinguished, partly on the ground that the payment in question was made to the widow of the employee and not to the employee's estate.

Here we do not think that fact alone is sufficient to compel the conclusion that the payment with which we are concerned was compensation rather than a gift. The facts in our case otherwise encompass all the elements of a gift. The only facts which the decided cases indicate *might* point the other way are two—first, that the corporation took a deduction for the payment as a business expense and second, the fact adverted to above, that the payment was made to the estate of the deceased rather than to his widow or other beneficiary. But, as in *Estate of Arthur W. Hellstrom, supra*, the first is not alone determinative.

Neither do we attach significance to the second under the facts of this case. The gift here was made to the estate because it was recognized by the donor corporation that thus it would "result in benefit and comfort to all members of his family who were remembered by him under his will." To us this is the same as if the payment had been made directly to the widow or other beneficiary. The interposition of the estate is without meaning otherwise than to ensure that the benefits of the payment would surely inure to those whom the corporation acting through its board of directors thought the deceased would want to benefit, i. e., his wife and his own children, to the exclusion of his wife's children by another marriage.

We hold that the payment was a gift and so excludible from gross income.

*Decision will be entered for the petitioner.*