**Lucy H. HARPER, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 67-1115.

United States District Court, C. D. California.

Feb. 19, 1970.

Olincy & Olincy and Leon B. Brown, Los Angeles, Cal., for plaintiff.

Wm. Matthew Byrne, Jr., U. S. Atty., Charles H. Magnuson, Asst. U. S. Atty., Chief, Tax Division, Los Angeles, Cal., for defendant.

### MEMORANDUM OPINION

CURTIS, District Judge.

The plaintiff brings this action for refund of Internal Revenue taxes paid by her for the years 1958 and 1959. In

these years the District Director assessed additional taxes upon the taxpayer in the sum of $7,363.31, including interest for the year of 1958, and $7,002.77, including interest for the year 1959.

The plaintiff is the widow of Harry L. Harper, who, until his death in March 1954, was an employee of Graybar Electric Company, Inc. At the time of his death, Mr. Harper held in his name certain shares of preferred and common stock of Graybar, which were appraised in his estate at $169,340.00. Since this stock was in fact community property, only one-half of it was included in the gross estate of Mr. Harper for estate tax purposes.

During the administration of the estate and on March 11, 1955, all of said shares of stock in Graybar were redeemed by the corporation in the exercise of its right to do so under an agreement with the decedent, the redemption price being $169,340. This sum, less transfer taxes, was paid to the taxpayer, as executor of the estate, and was distributed to her, as the sole legatee, in May 1955.

In 1958, the taxpayer received the sum of $23,688 and in 1959, the sum of $26,508, as "special death benefits" in accordance with the provisions of section 8 of the corporation's "Plan for Employees' Pensions, Disability Benefits, and Death Benefits." [1] The District Director included these payments in the taxpayer's gross income for the years in which the payments were received and treated them as additional benefits from the redemption of the stock. The taxpayer in her return for those years considered such payments gifts and therefore did not include them in her gross income. Accordingly, the use of the District Director's computation resulted in a greater tax for these two years, which additional tax is the subject matter of this action.

The facts contained in the pre-trial conference order have been admitted, and pertinent portions thereof follow:

"(K) Under Graybar's plan for pensions and other benefits in effect at the deceased's death, Graybar also paid plaintiff special death benefits under Section 8 of its 'Plan for Em-

1. Section 8. Special Death Benefits.

In the event of the death of any employee or of any person receiving a service or disability pension under this Plan who at the time of death is a holder of shares of Common Stock of the Company which the Company shall reacquire pursuant to any option or contract, the Committee may recommend to the Board of Directors that the Board authorize payments (hereinafter called "Special Death Benefits") during a limited period of 5 years from the last dividend date preceding the date of the reacquisition of such shares by the Company (in addition to any payments or benefits otherwise provided for in Section 7 of the Plan) in amounts not exceeding the cash dividends, if any, that may be paid during such limited period on a number of shares of Common Stock of the Company equal to the number of such shares reacquired by the Company from the estate of such decedent. No such special death benefits shall be or become payable in any event except as such dividends are declared and paid upon the shares of the Company during such limited period and then only if and to the extent authorized by

the Board of Directors pursuant to the recommendation of the Committee.

Any payments authorized pursuant to the preceding paragraph of this Section 8 shall be made to the estate of the decedent or at the option of the Committee to such beneficiaries of the deceased employee or pensioner as would be entitled to receive Regular Death Benefits in the event any Regular Death Benefits should be payable.

\* \* \* \* \*

Neither the provisions of this Section 8 nor the action or inaction of the Committee or the Board of Directors as to the payment or nonpayment of a Special Death Benefit shall give rise to or create in any person any right whatsoever, either legal or equitable, against the Company, the Board of Directors, the Committee or any member thereof for the payment of any Special Death Benefit, and the action or inaction of the Committee or the Board of Directors, or both, as to the payment or non-payment of a Special Death Benefit in any case shall not constitute a precedent or give rise to any obligation to take similar action in any other case or instance.

\* \* \* \* \*

ployees' Pensions, Disability Benefits, and Death Benefits'. \* \* \*

"(L) Said 1958 and 1959 payments to plaintiff were authorized by Graybar's 'Employees' Benefits Committee', composed of Graybar's president and other employees, and were approved by Graybar's Board of Directors. \* \* \*

"(M) All payments of special death benefits by Graybar were considered separately for each deceased common stockholder employee and, in some instances, no such benefits were authorized or paid. \* \* \*

"(N) Plaintiff in her federal income tax returns disclosed the receipt of the special death benefits, but treated them as gifts. Graybar, on the other hand, treated the payment of the special death benefits as an expense for 'book' purposes, but did not deduct them for income tax purposes, instead showing them in schedule M (Reconciliation of Taxable Income and Analysis of Earned Surplus and Undivided Profits) on the line entitled 'other unallowable deductions' and describing them there as 'special death benefits'.

"(O) Special benefits were paid by Graybar only to estates, or to beneficiaries who were eligible under the Plan and who were found by Graybar to be qualified dependent beneficiaries. Such payments were explictly limited to the estate or beneficiaries of an employee who had been a stockholder. If there were two employees who had performed ·identical services over the years, only one of whom was a stockholder, the special death benefits would be payable only to the estate or beneficiaries of the deceased stockholder; no such payments were authorized on behalf of the other's estate or beneficiaries. Or, even if both had been common stockholders but one had purchased a smaller amount of stock than the other, the payments in question would be geared to the amount of stock owned and not to the services performed. Such payments

were not to exceed the dividends over a five-year period that would otherwise have been payable on the stock surrendered after the death of a stockholder.

"(P) Although the stock of Graybar was 100% owned by its employees, 100% of the employees did not own stock.

"(Q) An employee of Graybar not owning Graybar stock could, by even more meritorious service, have made a greater contribution to the company than that of a stockholder, yet his estate or beneficiaries would not be entitled to receive any special death benefit payments.

"(R) All Graybar employees had been given the privilege of purchasing Graybar's stock in amounts that were dependent upon length of service, total compensation, and position held; but a number of them did not avail themselves of the opportunity, with the result that only about 60% became stockholders.

"(S) Graybar had a comprehensive plan of extra compensation, pensions, disability benefits, and death benefits for its employees, wholly apart from the payments here in controversy. In contrast to the special death benefits here involved, none of the benefits in the comprehensive plan is in any way conditioned upon stock ownership.

"(T) During the years 1955–59, where deceased employee-stockholders of Graybar left beneficiaries who were entitled to receive regular death benefits, Graybar would, in the absence of special circumstances being called to its attention, pay special death benefits (if any) to the same beneficiaries and not to the decedent's estate, without looking to the provisions of the decedent's will. \* \* \*

"(U) During the years 1955–59, Graybar paid special death benefits in approximately 200 cases where the decedent left beneficiaries entitled to receive regular death benefits. In only one of these cases were the spe-

cial death benefits paid to the decedent's estate rather than to the persons entitled to the regular death benefits; this was done on the recommendation of a district manager who pointed out that the estate would be shared equally by the employee's widow and three children although only the widow and one child were entitled to receive regular death benefits.

"(V) Plaintiff was never an employee of Graybar, and held no Graybar stock after the redemption in 1955. She performed no services for Graybar at any time.

"(W) The decedent's services were fully compensated by Graybar during his lifetime."

The sole question for determination here is: Are the "special death benefits" includable in the taxpayer's gross income for federal income tax purposes?

In the case of Graybar Electric Company, Inc. v. Commissioner of Internal Revenue, 29 T.C. 818 (1958), aff'm'd 267 F.2d 403 (2nd Cir. 1959), it has been held that such "special death benefits" paid by Graybar under its plan were not a deductible expense as compensation for services previously rendered. In other words, the court held that these payments were not by way of compensation for services rendered, but were "strictly an attribute of the stock."

In the Estate of Albert Salt, 17 T.C. 92, the court held that "regular death benefits" paid to the widow were not includable in the estate of the decedent employee because they were payable to the widow under the plan and "not as a stockholder of Graybar."

Although these payments are made to a class of persons who have a certain relationship to the holders of stock, these "special death benefits" do not purport to be dividends, for the recipient has never been a stockholder. The plan does refer to dividends, but merely as a measure for calculating the maximum limits beyond which the board of directors may not go in making these discretionary payments.

Furthermore, they cannot be considered as additional compensation for the redeemed stock, for they were authorized and paid at a time long after the redemption was complete and unconditional.

The Commissioner contends that these "special death benefits" should be considered "other income." But income from what? How has it been earned or produced and what gives rise to its payment?

As was said in the *Salt* case, at the time of decedent's death neither he nor his widow had any vested interest in the possible death benefits. After his death, his widow had no enforceable right to them and whether she would receive anything was entirely within the discretion of the committee administering the plan.

The taxpayer contends that these payments should be considered gifts to her. The common definition of gift is "[a] voluntary transfer of property by one to another, without any consideration or compensation therefor." 38 C.J.S. Gifts p. 779. It has often been referred to as an act of generosity, for one of its most distinguishing characteristics is that it is without consideration. We are unable to find any consideration for the "special death benefits" which the plaintiff here has received. They appear to be the result of the generosity of the board in attempting, without being compelled to do so, to make up to the plaintiff for some real or imagined loss occurring indirectly from the operation of the redemption plan.

We hold, therefore, that the death benefit payments constituted gifts to the plaintiff and that she is entitled to a refund.

Attorneys for plaintiff shall prepare findings of fact, conclusions of law and judgment.